George H. Gould, Plaintiff-Appellee, v. Country Mutual Casualty Company, an Illinois Corporation, Defendant-Appellant.

Gen. No. 11,481.

Second District, First Division.

March 27, 1962.

Ordered published in full October 24, 1962.

O'Brien, Burnell, Puckett & Barnett, of Aurora (Wilson D. Burnell, Donald L. Puckett and Henry D. Casey, of counsel), for appellant.

Robert E. Dolph, of Aurora (Robert E. Dolph, of counsel), for appellee.

DOVE, P. J.
Country Mutual Casualty Company issued to George H. Gould, a member of the Kane County Farm Bureau, a policy of insurance designated as "Farmers General and Employers Liability Policy." This policy became effective on January 21, 1948 and it was in full force during the entire month of June, 1953. By its provisions the liability of the company for loss on account of an accident resulting in death to one person was limited to $10,000. Its insuring agreements were designated as coverages, A, B, C and D and by these provisions the company became obligated to pay the insured "all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, on account of accidental bodily injuries, including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons not employed by the insured, by reason of the insured's negligence, including liability arising from the ownership, maintenance, or use of any farm implement or any farm tractor not subject to motor vehicle registration."

Following Coverage D of the insuring agreement under the heading, "Defense and Expense," appears the following: "The company agrees with respect to insurance afforded by this policy under coverages A, B, and C, to defend, in the name of and on behalf of the insured, any suits, even if groundless, brought

against the insured to recover damages, and to pay, irrespective of the limits of liability, all costs taxed against the insured in any legal proceeding defended by the company, all interest accruing after entry of judgment upon such part thereof as shall not exceed said limits of liability, and all expenses incurred by the company in its investigations, and the adjustment of any claim, or the defense of any suit resulting therefrom." Under the heading "General Exclusions," it was stated that the policy did not cover any "damage, loss, liability or obligation arising out of any criminal, wilful, deliberate or malicious act."

On October 24, 1958 in the Circuit Court of Kane County George H. Gould filed the instant complaint by which he demanded judgment against Country Mutual Casualty Company for $11,500. The defendant answered the complaint and filed its demand for a jury trial and also filed affirmative defenses hereinafter referred to. The plaintiff filed his motion to strike the affirmative defenses and for a summary judgment in his favor. In opposition to this motion for a summary judgment, defendant filed counter affidavits and a motion for summary judgment in its favor. Following a hearing, the trial court entered an order striking defendant's affirmative defenses, denying defendant's motion for judgment, sustaining plaintiff's motion and entered a summary judgment in favor of the plaintiff and against the defendant for $11,500, this amount includes an attorney fee of $2500. To reverse this judgment defendant appeals.

The instant complaint, alleged the issuance of the insurance policy and averred that the plaintiff on the night of June 20, 1953 heard a disturbance in and about his farm; that he was aware that livestock and other personal property had been stolen from him and others in his community; that he fired a shot and the pellets from the gun which he fired, hit and killed William Sandell, sixteen years of age. The complaint

269

then alleged that plaintiff immediately notified the defendant of the facts concerning this accident and requested defendant to furnish legal counsel for him in the legal proceedings to follow but defendant did then, and later, refuse to provide legal counsel.

The complaint then alleged that on February 18, 1954, the administrator of the estate of William Sandell brought a wrongful death action against Gould; that the wrongful death action complaint alleged, among other things, that plaintiff herein negligently, carelessly and improperly discharged a gun, as a result of which, Sandell sustained wounds from which he died on June 21, 1953; that the complaint in the wrongful death action also charged that Gould wilfully, intentionally and maliciously assaulted Sandell by discharging a gun at him and as a result thereof Sandell sustained divers wounds from which he died on June 21, 1953.

It was then alleged, in the instant complaint, that after defendant had refused to provide legal counsel, he, Gould, employed counsel of his own choosing who filed an answer in the wrongful death action and that by his answer, he denied the allegations of the complaint. The complaint then averred that the issues made by the pleadings in the wrongful death action were submitted to the court for determination and culminated in a judgment in favor of the plaintiff and against defendant, Gould, in the sum of $9,000. It was then averred that Gould paid this judgment and in addition thereto, became obligated to pay his attorney fees amounting to $2,500. Attached to the complaint and made a part thereof was, (a) a copy of the insurance policy issued to Gould by defendant; (b) a copy of the complaint in the wrongful death case; (c) a copy of the judgment order in favor of the administrator and against Gould for $9000 and (d) a copy of an instrument showing a satisfaction of this judgment.

270

The judgment order in the wrongful death action, a copy of which was attached to the complaint found that Sandell, at the time he was killed, on the night of June 20, 1953, was in the exercise of due care and caution for his own safety and that defendant, Gould, was guilty of the negligence charged in count one of the amended complaint but was not guilty of a wilful, intentional and malicious assault on Sandell or guilty of wanton misconduct as charged in counts two and three of the amended complaint in the wrongful death action.

The defendant in its answer to the instant complaint admitted the issuance of the policy of insurance and the coverage therein provided as alleged, but denied that it agreed to defend any suits, even though groundless, brought against the plaintiff in the name of and on behalf of the plaintiff. The answer averred that there was no coverage afforded the plaintiff in connection with Sandell's death, under the exclusion clauses contained in the policy. The answer made no reference to the allegations of the complaint with reference to the employment of counsel by Gould to defend him in the wrongful death case except to state that defendant had no knowledge, sufficient to form a belief, with reference to the allegations of the amended complaint to the effect that Gould had become legally obligated to pay his attorney $2500 as his attorney fees in connection with the defense of the wrongful death action.

As affirmative defenses the answer set up: (a) the exclusion provision which provided: "This policy does not cover damage, loss, liability or obligation arising out of any criminal, wilful, deliberate or malicious act," and, (b) that Gould was convicted of the criminal act of manslaughter in the Kane County Circuit Court in connection with the death of said William Allen Sandell.

271

As an alternative further affirmative defense defendant alleged that on or about June 20, 1953, plaintiff Gould, wilfully, deliberately and maliciously fired a shot gun in the direction of William Allen Sandell and averred that Gould knew, or should have known, "that as a result of such action on his part, said William Allen Sandell might or could be killed, and that, in fact, said William Allen Sandell was killed because of said action on the part of the plaintiff." Attached to the answer and made a part thereof were copies of: (a) the indictment in the criminal case; (b) the verdict of the jury finding Gould guilty of manslaughter; (c) the judgment order of conviction, and (d) the sentence imposed on Gould. As stated, the trial court denied defendant's motion for judgment on the pleadings, sustained plaintiff's motion, and rendered judgment against the defendant for $11,500.

To sustain the judgment of the trial court appellee insists that the insurance policy issued by appellant to him provided that when he paid the administrator of the estate of William A. Sandell the amount of the judgment the administrator recovered on account of the death of his intestate, because of the negligence of the insured, that then, under the provisions of the policy of insurance, appellant was obligated to pay appellee the amount of said judgment; that it was specifically determined in the wrongful death action, that Sandell's death was occasioned by accidental injuries sustained by reason of insured's negligence; that appellant, under the provisions of its policy, was obligated to defend the wrongful death action but wrongfully refused to do so and after such refusal, appellee was obliged to retain counsel and defend the action and by so doing incurred an additional $2500 obligation for attorney fees. Counsel insists, that the pleadings and affidavits presented no triable issue of

272

fact and that appellee's motion for summary judgment was properly granted by the trial court.

Counsel for appellant insist that the pleadings disclose that the policy upon which the instant action is founded, expressly provided that it did not cover any damage, loss, liability or obligation arising out of any criminal act of the insured; that the death of William A. Sandell was the result of the insured's criminal act and therefore appellant was under no obligation of any kind or character under the provisions of the policy. It is further insisted that the insured's prior conviction of manslaughter in connection with the death of Sandell is conclusive evidence that plaintiff is not entitled to recover in this action and it is also insisted, that appellant, not being liable under the policy was not required to undertake the defense of Gould in the wrongful death action, was justified in refusing to do so and not being liable, the trial court erred in not sustaining defendant's motion for a summary judgment in its favor. Counsel contend that inasmuch as it was not a party to the wrongful death action, it cannot be bound by that judgment and insist that, if it is not entitled to a summary judgment, that then, whether the death of Sandell arose out of a criminal act of appellee or was occasioned by insured's negligence is a question of fact presented by the pleadings and to determine that issue, it is entitled to a jury trial.

The determinative questions presented by this record are: (1) Is appellant, the insurer, conclusively bound, in this proceeding, by the finding and judgment in the proceeding brought against Gould, the insured, in the wrongful death action wherein the administrator of the estate of William A. Sandell was the sole plaintiff and George H. Gould was sole defendant? The trial court held it was. (2) Is the record and judgment of Gould's conviction of man-

slaughter competent evidence and admissable for any purpose upon a trial of this case? The trial court held it was not. If, it should be held that such record and judgment of conviction are admissable in evidence the question would then arise whether such record and judgment are conclusive of the fact that Sandell lost his life as a result of a criminal act of the insured, Gould, or is such record and judgment only prima facie proof that Sandell lost his life as a result of a criminal act committed by the insured?

Counsel for both parties recognize that the authorities in other jurisdictions are in conflict with reference to the admission of evidence, in a subsequent civil action of a prior conviction of one of the parties of a crime, arising out of the same transaction or occurrence. Some courts admit such evidence against the party convicted as conclusive evidence of the issues decided in the criminal proceeding. Other courts exclude such evidence entirely while in other jurisdictions such evidence is admitted against the party convicted, as prima facie evidence of the issues decided. Counsel for appellee insist, however, that in this state the record of the conviction of appellee for a criminal offense presented no defense to the instant action.

Corbley v. Wilson, 71 Ill 209 was an action brought by Wilson against Corbley for slander. The defense interposed was that the spoken words were true. The alleged slanderous words charged the defendant with a crime and upon the trial of the slander action, the plaintiff offered and the court admitted, in evidence, the record of his acquittal of the criminal charge. In reversing the judgment for the plaintiff, the Supreme Court said that the verdict and judgment in the criminal prosecution had no place in the civil cause for any purpose.

In McCottrell v. Benson, 32 Ill App2d 367, 178 NE 2d 144, it was said that the record of conviction of

the plaintiff in a criminal action of an assault, is not admissable in evidence in a later civil action based upon the same assault.

In Cammarano v. Gimino, 234 Ill App 556, the court held that evidence of defendant's conviction in a prior criminal action for the same assault was not admissable in evidence in a subsequent civil action.

In a majority of the other jurisdictions the authorities are to the same effect. In Washington National Ins. Co. v. Clement, 192 Ark 371, 91 SW2d 265, 130 ALR 694, it was held that the conviction of one for driving his car while intoxicated, at the time of receiving certain injuries in an accident, did not conclude such person from recovering for disabilities sustained in the accident upon an insurance policy specifically excepting, from the risk, any injuries sustained by the insured while violating the law. The court held that such judgment of conviction was not evidence in the subsequent civil action to establish the truth of the facts on which it was rendered.

Interstate Dry Goods Stores v. Williamson, 91 W Va 156, 112 SE 301, 31 ALR 258, was an action brought to recover the value of certain goods which, it was alleged, had been stolen by the defendant, when plaintiff's warehouse was burglarized. Following the burglary, defendant was indicted, plead not guilty, was tried, convicted and sentenced to the penitentiary. Upon the trial of the civil case, the plaintiff offered in evidence the record of the conviction of the defendant of the burglary, proof that the defendant was the same party as the defendant in the criminal action who was convicted, and evidence of the value of the stolen goods. No evidence was offered showing, or tending to show, that the defendant committed the burglary except the judgment of conviction. The circuit court directed a verdict for the defendant and the plaintiff appealed. The West Virginia Supreme

275

Court of Appeals in affirming the judgment of the trial court stated that the sole question presented for determination was: "can the record of a judgment rendered in a criminal trial be used as evidence in a civil suit to prove the facts which were necessarily determined by it in the criminal case?" In answering this question the court said that had the judgment been rendered on a plea of guilty the record of that plea could be introduced not as conclusive evidence, against the defendant, but as an admission on his part. "It is uniformly held," continued the opinion, "that a judgment of conviction or acquittal in a criminal case is not proper evidence in a civil case to establish the facts which were necessary to be established in order to secure such conviction or acquittal."

Following the report of this cause in 31 ALR 258, beginning on page 261 is an annotation on: "Conviction or acquittal as evidence of facts on which it was based, in a civil action." The author of the annotation states that the rule, supported by the great weight of authority is to the effect that a judgment of conviction or acquittal rendered in a criminal prosecution cannot be given in evidence in a purely civil action, to establish the truth of the facts on which it was rendered. Supplemental annotations appearing in 57 ALR 504, 80 ALR 1145 and 130 ALR 694 are superseded by a later one in 18 ALR2d 1287. It is there stated (18 ALR2d 1289) that a large number of courts continue to apply the rule excluding a previous conviction offered, in a civil action, as evidence of the facts upon which it was based. "However," continues the annotator, "an increasing number of decisions have approved the admission of such evidence, reasoning that the safeguards afforded the accused under criminal procedure are greater than those in a civil action, so that he has no cause for complaint that an adverse decision arrived at under such restraints

276

should be used against him, especially where it is admitted, only, as prima facie evidence, subject to rebuttal." At page 1315 of this same annotation, it is said that there are stronger arguments for excluding in a civil action, proof of a prior acquittal than in cases of a prior conviction, since a judgment of conviction is a positive finding, indicating that the state has successfully borne the extraordinary burden of proving the relevant facts beyond a reasonable doubt, whereas the acquittal, does not purport to be a judgment of innocence but is merely a negative statement that the proof necessary for a conviction was not forthcoming.

Illustrative of the cases, cited and relied upon by appellant and which hold that the record and judgment of conviction of a criminal offense is admissable as material and relevant to the issues in a subsequent civil action are Eagle Star and British Dominions Ins. Co. v. Heller, 149 Va 82, 140 SE 314, Schindler v. Royal Ins. Co., 258 NY 310, 179 NE 711, 80 ALR 1142, Fidelity-Phenix Fire Ins. Co. v. Murphy, 226 Ala 226, 146 So 387 and North River Ins. Co. v. Militello, 100 Colo 343, 67 P2d 625, Wolff v. Employers Fire Ins. Co., 282 Ky 824, 140 SW2d 640, 130 ALR 682.

Eagle Star and British Dominions Ins. Co. v. Heller, 149 Va 82, 140 SE 317 was an action by Max Heller to recover under a fire insurance policy, upon a stock of goods, after he had been convicted of wilfully burning the same with intent to injure the insurer. The trial court refused to admit in evidence the record of conviction holding that such evidence was irrelevant and immaterial. The Supreme Court of Appeals of Virginia reversed this judgment and cited and commented upon many cases. The court in the course of its opinion said that to sustain the judgment of the trial court would be, in effect, insuring the plaintiff against the consequences of violating the Virginia Statute which made it a felony to wilfully

277

burn any building or goods or chattels which, at the time, are insured against loss or damage by fire with intent to injure the insurer. "To permit a recovery under a policy of fire insurance," continued the court, "by one who has been convicted of burning the property insured would be to disregard the contract, be illogical, would discredit the administration of justice, defy public policy and shock the most enlightened conscience. To sustain such a judgment would be to encourage and give support to the current thoughtless and carping criticisms of legal procedure, and to justify the gibe that the administration of the law is the only remaining legalized lottery. Our conclusion then, under the facts of this case, is that the court erred in refusing to admit evidence of the conviction; that when admitted the precise finding of fact, that the accused was criminally responsible for the fire, unquestionably incendiary, which destroyed his goods, is conclusive upon the plaintiff, Heller; that this judgment of a court of competent jurisdiction was a determination of that particular and decisive fact as against him; that this judgment cannot be attacked except upon the ground of fraud, perjury, collusion or some other such ground of invalidity, and that when so admitted in evidence there could have been but one proper verdict and that a verdict for the defendant. We shall therefore, reverse the judgment in favor of the plaintiff and enter judgment here for the defendant."

Schindler v. Royal Ins. Co., 258 NY 310, 179 NE 711, 80 ALR 1142, was an action brought to recover under an insurance policy for a fire loss. The defense interposed was that plaintiff had been convicted in the County Court of Nassau County of the crime of presenting to defendant a false and fraudulent proof of loss and that such judgment of conviction was a bar to the maintenance of this action. The court stated that from an early day the rule in New York permits

278

proof of the conviction of a criminal offense as prima facie evidence of the facts involved, but that a judgment of conviction or acquittal is not decisive of the facts on which it is based. The court then cited and quoted from an English case (Matter of Crippen's Estate, LR (1911 Prob 108, 115) where it is said: "In my opinion, where a convicted felon, or the personal representative of a convicted murderer who has been executed, brings any civil proceeding to establish claims or to enforce rights, which results to the felon, or to the convicted testator from his own crime, the conviction is admissable in evidence, not merely as proof of the conviction, but also as presumptive proof of the commission of the crime.—It would be an unedifying spectacle if the courts should not apply the strict rule which excluded all reference to the judgment of conviction in the civil action as evidence tending to establish the material facts. We shall, however, continue to hold that it is not effective as a plea in bar."

In Fidelity-Phenix Fire Ins. Co. v. Murphy, 226 Ala 226, 146 So 387, the Supreme Court of Alabama quoted extensively and approvingly from the Schindler case, supra, adopted its reasoning, and held that evidence of the conviction of a crime which created the liability for which plaintiff seeks indemnity from an insurance company is admissable as a circumstance tending to show the commission of such crime.

North River Ins. Co. v. Militello, 100 Colo 343, 67 P2d 625, was an action brought to recover on a fire insurance policy which covered an apartment house owned by the plaintiff and which had been destroyed by a fire and an explosion. Prior to the trial of this cause the plaintiff was convicted of the crime of burning the property with intent to defraud the insurance company and sentenced to the penitentiary. Upon the trial of the civil case the record of conviction was admitted in evidence limited to impeaching the credibility of the plaintiff. The plaintiff recovered a judg-

ment for the full amount of the policy and the defendant appealed. In reversing the judgment of the trial court and remanding the cause for a new trial the supreme court of Colorado said: "On the question of the admissibility or inadmissibility of the evidence of a criminal conviction in a civil proceeding and the limitations, if any, to be placed thereon, this court has not committed itself, and we now are free to adopt the rule which seems most logical and in accord with public policy. There is precedent for both extremes; that is, that it is inadmissible for any purpose, and contra, that it is admissible and conclusive as to the fact proven. We embrace neither rule. Logic compels a relaxation of the long followed earlier rule of complete exclusion, but we are not ready to announce that all convictions are to be conclusive evidence for the purpose of establishing a material fact, even though such fact was the basis of the conviction. It would be more definitely a legislative function to declare such a public policy, however, an enlightened conscience does not permit us to cling to the archaic rule of exclusion for all purposes when such a fact has been solemnly and judicially determined. Greater weight is to be given to this conclusion when the fact of guilt is established beyond a reasonable doubt in a trial in which the accused is surrounded by all of the safeguards afforded by law. The plaintiff, defendant in the criminal action, was convicted of defrauding the insurance company by the identical act resulting in the loss upon which he now predicates his claim for recovery against the same company. We are not in sympathy with any rule of law which would permit him to profit by his own wrong. The record of conviction in the criminal case was admissable in evidence in this case, and when so admitted, carried proof of the conviction and is to be considered as prima facie evidence of the fact that plaintiff destroyed or caused

280

to be destroyed the property for which he now seeks to recover judgment in the amount of the insurance thereon. It is such presumptive proof, as to shift the burden to him, to establish his innocence thereof."

 In this jurisdiction the law is that a judgment in a criminal case based upon a plea of not guilty cannot be given in evidence in a subsequent civil action to establish the facts on which it was rendered. Upon a plea of guilty a record of such judgment is admissible in a subsequent civil action against the defendant in the criminal case, not conclusive of the issues in the civil case, but as a judicial admission, subject to explanation and contradictions, and to be weighed and considered by the jury in connection with all the other evidence in the case. (Young v. Copple, 52 Ill App 547; Schreiner v. High Court of Illinois Catholic Order of Forresters, 35 Ill App 576.)

In the instant action the allegations of the affirmative defense which the trial court struck disclosed that the plaintiff seeks to recover under a policy of insurance which explicitly stated that it did not provide any coverage for any damage to the insured arising out of any criminal act; that previous to the time the instant complaint was filed plaintiff was indicted for the crime of manslaughter in connection with the death of William Allen Sandell; that he plead not guilty to the commission of that offense; that the issues made by the charge and plea were submitted to a jury and he was found guilty of manslaughter; that judgment was rendered upon that verdict, sentence was imposed and defendant was imprisoned in the penitentiary. By the policy of insurance, which forms the basis of this action, the insurer became liable to pay the insured, the amount specified in the policy, on account of the accidental death of anyone, but its policy did not provide any coverage

281

to the insured which arose out of any criminal act by the insured. The plaintiff in this action was the defendant in the criminal action. He was convicted of unlawfully killing William Allen Sandell, an act which must have been accidental and not criminal, if defendant was obligated under the provisions of its policy contract.

Under the authorities relied upon by appellant, which are quite persuasive, the record of appellee's conviction was either conclusive, or prima facie, proof of the fact that William Allen Sandell lost his life as a result of a criminal action the part of the insured. The authorities herein referred to, and many others, from this and other jurisdictions, hold otherwise. The trial court, therefore did not err in striking this affirmative defense.

Whether appellant is conclusively bound, in this proceeding, by the finding and judgment in the action brought against the insured in the wrongful death action, wherein appellee was defendant and the administrator of the Estate of William Allen Sandell was plaintiff, remains to be considered.

Under the heading "Insurance Agreements," the policy issued by appellant to appellee contains the following provision:

"Defense and Expense.

The company agrees with respect to insurance afforded by this policy under coverages A, B, and C to defend, in the name of and on behalf of the insured, any suits, even if groundless, brought against the insured to recover damages, and to pay, irrespective of the limits of liability, all costs taxed against the insured in any legal proceeding defended by the company, all interest accruing after entry of judgment upon such part thereof as shall not exceed said limits of liability, and all expense made by the company in its in-

282

vestigations and the adjustment of any claim, or the defense of any suit resulting therefrom."

■■■ Where an insurance company, responsible under a liability policy to the insured for whatever might be recovered in an action against such insured, has notice of an action against the insured with respect to a liability covered by the policy and is given an opportunity to appear and defend, the judgment rendered in the action, if obtained without fraud, will be conclusive on the company, whether or not the company appeared and whether the company did or did not participate in the defense of the action, and such a judgment is conclusive on the insurer as to all questions determined therein which are material to a recovery against it in an action on the policy. The judgment is not conclusive, however, as to matters which were not tried or determined in the former action, such as the question whether the loss was within the coverage of the policy. (22 ILP Insurance, sec 524, pp 568–569.) In support of this text the author cites Lachenmyer v. Central Mutual Ins. Co., 284 Ill App 391, 2 NE2d 177; Snyder v. U. S. Mutual Ins. Co., 312 Ill App 337, 38 NE2d 540; Wold v. Glens Falls Indemnity Co., 269 Ill App 407 and Welborn v. Ill. Nat. Casualty Co., 347 Ill App 65, 106 NE2d 142.

In Wold v. Glens Falls Indemnity Co., 269 Ill App 407 it appeared that the defendant, Indemnity Company, issued an insurance policy to Arthur E. Wold, by the provisions of which the company agreed to pay all sums which the insured shall become liable to pay by reason of the negligent operation of his described motor truck. On May 31, 1929, the insured, while operating a truck, ran into Warren Wegener who died as the result of the injuries he received. The insurer was duly notified and in June, 1929, it notified the insured that the policy did not cover the accident in question because the insured was doing general haul-

283

ing at the time of the accident in violation of the conditions of the policy. Thereafter in a wrongful death action brought by the administrator of Warren Wegener against Wold, the administrator recovered a judgment and that judgment, not having been paid, garnishment proceedings were instituted in the name of Wold, for the use of the Administrator of the Estate of Warren G. Wegener, against Glens Falls Indemnity Company. The pleadings consisted of an affidavit and interrogatories. In its amended answer the insurance company denied that it was indebted to Wold but admitted that it issued the policy of insurance wherein it agreed to indemnify Wold against liability for damages arising out of the use of the motor truck described therein and upon the terms and conditions contained in the policy. Its answer then alleged that at the time of the accident the truck was being used by Wold for purposes in violation of the conditions of the policy. The trial was before the court, without a jury, resulting in a judgment in favor of the plaintiff and against the garnishee for $10,583.33. The Indemnity Company appealed.

The Appellate Court, affirmed the judgment of the trial court and stated that the Indemnity Company had notice of the accident and of the wrongful death action against the assured and upon investigation denied liability and did not participate in the trial of the wrongful death action; that in a garnishment proceeding the trial court was obliged to determine what, if anything, was due Wold from the Indemnity Company under the terms of its contract; that the contract of indemnity was against loss by casualty and was absolute upon happening of the loss, provided there was no breach by the insured of the conditions of the policy. The opinion continued: (pp 412–413) "The garnishee repudiated its obligation by its failure to appear and take part in the defense of Wold in the original proceedings, and it is not now in a position

284

to question the result of that action. The beneficial plaintiff had a right to have the question of the indebtedness determined, and the amount found due from the garnishee applied to the payment of the judgment, not because of any privity between the plaintiff and the garnishee defendant, but because of the right of the judgment creditor to have money due from the garnishee under the terms of the insurance contract existing between the parties, applied to the payment of the judgment. Kinnan v. Charles B. Hurst Co., 317 Ill 251, 148 NE 12. Under the facts and circumstances in the instant case the amount that may be due from the insurance company to the assured is subject to garnishment proceedings, although the liability is disputed." The court then went on to say, (pp 414–415): "The rule in this state is that a judgment creditor, by garnishment proceedings, may recover only such indebtedness as his debtor might recover in an action of debt or in an action of assumpsit against the defendant, Glens Falls Indemnity Company, and the rule is no different where the indebtedness is denied by the garnishee as in the instant case. The burden to establish such liability is upon the plaintiff. In the instant case the beneficial plaintiff recovered a judgment against Arthur E. Wold, and the question arises, is the garnishee indebted to the judgment debtor upon a policy of insurance? In the action before us the garnishee denied that it was indebted to the judgment debtor, which indebtedness, if established, is to be applied in payment of the judgment." The court held in this case that, the insurance carrier, in the garnishment proceeding, was in no position to question the result of the wrongful death action, it having repudiated its obligation to appear and take part in the defense of the insured in that case. The court stated, however, that the liability of the insurance company to the insured must

285

be measured by the terms of the policy and that the judgment creditor could only recover the amount his judgment debtor might have recovered against the insurance company.

In Drennan v. Bunn, 124 Ill 175, 16 NE 100 it appeared that Thomas J. Bunn sold to Frank P. Drennan two promissory notes executed by R. C. Huskey and Eva J. Huskey, Bunn endorsed these notes without recourse, and delivered them, together with the trust deed, which had been given to secure their payment, to Drennan. Thereafter Drennan filed two suits against R. C. Huskey and Eva J. Huskey. One was an ejectment action to recover possession of the land and the other was a foreclosure proceeding. The defense of usury was interposed in both suits. Huskey paid $671, admittedly due, after deduction of all interest that had been paid, and the ejectment suit was dismissed. The foreclosure suit was prosecuted to a final decree, which dismissed the complaint, the court finding that the notes were usurious and that all interest had been forfeited and that, after deducting the interest that had been paid and the sum Drennan had received from Huskey, all that was due on the notes had been paid. Thereupon Drennan sued Bunn to recover the difference between the amount Drennan actually received on the notes and the amount due thereon at the time he purchased them. In the Circuit Court judgment was rendered for the defendant and the Appellate Court affirmed. Upon further appeal, the Supreme Court reversed the judgments of the Circuit and Appellate Courts and in the course of its opinion stated that two questions arose on the record. First, is the vendor of negotiable notes, in the absence of express representation, and who assigns them without recourse, liable on an implied warranty, for any deficiency between the amount apparently due upon the face of the instrument and the amount legally collectible upon it? Second, if liable, is the

286

vendor concluded by the judgment between his vendee and the payor of the instrument, by reason of having been notified, in apt time, of the pendency of the suit and of the defense of usury set up by the payor, although not expressly requested to take charge of the suit, and not notified that the vendee intends to hold him responsible for the result of the suit? The court answered both questions in the affirmative and in the course of its opinion said (p 188): "Where one party is liable to indemnify another against a particular loss, it is because, by law or by contract, the primary liability for such loss is upon the party indemnifying, and in such instances the party bound to indemnify is in privity with the party to be indemnified, and he therefore has a direct interest in defeating any suit whereby there may be a recovery as to the subject matter of the indemnity, against the party to be indemnified. The party to be indemnified, moreover, is manifestly, directly interested in having him defeat all recovery in such suit, and so their respective interests and duties in respect of such suit must be the same."

The court in Drennan v. Bunn, supra, cited and quoted from various authorities among them Littleton v. Richardson, 34 NH 179, where it is said: "When a person is responsible over to another, either by operation of law or by express contract, and he is duly notified of the pendency of the suit, and requested to take upon himself the defense of it, he is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means and advantages of controverting the claim as if he were the real and nominal party upon the record. In every such case, if due notice is given to such person, the judgment, if obtained without fraud or collusion, will be conclusive against him whether he has appeared or not." The court then stated that in numerous other cases the general doc-

trine is asserted that notice to the party responsible over, imposed upon such party the duty of defending, and renders him liable for the result of the suit and held that the decree in the foreclosure proceeding was binding and conclusive against Bunn, he having had notice of that suit.

In Butler v. Continental Oil Co., 182 SW2d 843, the Court of Civil Appeals of Texas stated that it was the settled law of that and other states that, where a person who is responsible to another for whatever may be recovered in a suit either by operation of law or by express contract, has notice of a suit against the latter and has been given an opportunity to appear and defend, the judgment which is rendered in the action, if obtained without fraud, will be conclusive on him whether he appeared or not. In the course of its opinion the court said: "It is uniformly held that, in such a case, the person responsible over is no longer regarded as a stranger because he has had notice of the action, the right to appear and defend the action and the same means of controverting the claim asserted as if he had been made a formal party to the record and that it would be unreasonable to permit him to contest the justice of the claim in the suit against himself, after having neglected or failed to show its injustice in the suit against the person to whom he is responsible over."

In State Bank of New Prague v. American Surety Co. of New York, 288 NW 7, the Supreme Court of Minnesota said that a judgment recovered against an indemnitee upon an obligation covered by a contract of indemnity is conclusive against the indemnitor in an action by the indemnitee to recover indemnity, if the indemnitee gave the indemnitor notice of the pendency of the action in which the judgment was recovered and requested him to assume the defense. In the course of the opinion the court cited 2 Van

Fleet, Former Adjudication, p 1178, sec 579 where it is said: "If the person sued gives due notice of the pendency of the suit to the one who is responsible over and requests him to assume the defense, all the cases agree that the latter will be concluded by the judgment rendered, if sued upon his obligation by the former."

"Where it is the duty of an automobile liability insurer to defend an action against the insured and the insurer erroneously or wrongfully refused to do so on the ground that the claim upon which the action against the insured is based is not within the coverage of the policy, the insurer is guilty of a breach of the contract which renders it liable to the insured for all damages resulting to him as a result of such breach." (5A Am Jur Automobile Ins., sec 127.) The obligations created by the insurer's refusal to defend are to pay the amount of the judgment rendered against the insured in the action brought against him by the injured party, and the expense the insured was put to by reason of making the defense himself, including his court costs, attorney fees and other reasonable expenses. (5A Am Jur Automobile Ins., sec 128.)

In an annotation in 49 ALR2d 694, it is said (p 711) that all the cases agree that where it is the insurer's duty to defend, and the insurer wrongfully refuses to do so on the ground that the claim upon which the action against the insured is based is not within the coverage of the policy, the insurer is guilty of a breach of contract which renders it liable to the insured for all damages resulting to him as a result of such breach. On pages 717, 718 of this same annotation it is said that if an insurer unjustifiably fails to defend such an action against the insured on the ground that the claim upon which the action against the insured was based, is outside the cover-

289

age of the policy, and the insured thereupon undertakes the defense of the action, the insurer is liable for the amount of the judgment obtained in such action against the insured and the reasonable and necessary expenses which the insured has incurred in conducting the defense (p 721). The term "reasonable and necessary expenses" includes reasonable attorney fees (p 727), the court costs taxed or incurred in the suit (p 730), reasonable witness and stenographers fees (pp 731, 732), and investigating expenses (p 733). Among the Illinois cases cited are Kinnan v. Charles B. Hurst Co., 317 Ill 251, 148 NE 12; Lincoln Park Arms Bldg. Corp. v. United States Fidelity and Guaranty Co., 287 Ill App 520, 5 NE2d 773; Oscar Heineman Corp. v. Standard Surety & Cas. Co., 289 Ill App 358, 7 NE2d 389; Coulter v. American Employers' Ins. Co., 333 Ill App 631, 78 NE2d 131.

██ While the wrongful refusal of the insurer to conduct the defense of an action based upon a claim within the coverage of the policy makes it liable, the insurer is not exposed to a greater liability to the insured than the limit of the amount stated in the policy. The failure to defend, however, does expose the defendant to the additional liability for the cost and expense which plaintiff was put to by reason of defendant's breach of the contract and embraces reasonable attorney fees. (Manheimer Bros. v. Kansas Casualty and Surety Co., 149 Minn 482, 184 NW 189; Coulter v. American Employers' Ins. Co., 333 Ill App 631, 641, 78 NE2d 131.)

██ No issue is made in this case as to the issuance of the policy, the coverage therein provided or notice by the insured to his insurer, or insured's request that the insurer undertake the defense of the wrongful death action. Appellant's contention here is simply that, under the provisions of the policy, it was not required to provide any defense for its insured

290

and that it was justified in refusing to do so. The Civil Practice Act authorizes the entry of a summary judgment in any proper case. The pleadings are not to be conclusive, if there are no disputed questions of fact except those made by the pleaders. Where plaintiff's affidavits are sufficient, entry of summary judgment is not prevented by reason of the fact that defendant has filed pleadings which, on their face, set up a good defense. The primary purpose of affidavits under summary judgment proceedings is to inform the court whether or not there is in fact an issue worthy of trial. If no such issue of fact is shown, summary judgment may be entered in the absence of a triable issue of fact. Harrell v. Summers, 32 Ill App2d 358, 178 NE2d 133.

What appeared from the pleadings, exhibits and affidavits and what the record in this case disclosed to the trial court at the time counsel for the respective parties moved for a summary judgment was that on January 21, 1948, defendant issued to plaintiff its insurance policy which contained its insuring agreement, coverages, and its exclusion provisions; that the copy of this policy, attached to the complaint is a true and correct copy of said policy; that this policy was in full force and effect on and after the month of June, 1953; that on June 20, 1953 William A. Sandell died as a result of injuries which he received when he was shot by the plaintiff; that thereafter plaintiff was indicted for the crime of manslaughter, plead not guilty, was convicted and sentenced to the penitentiary as a result of his shooting Sandell; that subsequently the administrator of Sandell's estate brought an action, against plaintiff to recover for the alleged wrongful death of Sandell; that defendant was notified of that action and requested to undertake its defense on behalf of the defendant in that proceeding, the plaintiff in the instant cause; that defendant

291

refused, taking the position that, under the provisions of its policy, it was in no way obligated to the plaintiff; that the insured then employed counsel and interposed a defense in the wrongful death action; that the wrongful death action culminated in a finding that plaintiff here, the defendant in the wrongful death action, was not guilty of wilful or wanton misconduct but was guilty of negligence in connection with the death of Sandell and a judgment was rendered in favor of the administration of Sandell's estate and against plaintiff here for $9000; that plaintiff paid that judgment and became obligated to pay $2500 to his attorney for his services in representing him in the wrongful death action; that $2500 is the reasonable and customary fee for the services rendered by counsel representing plaintiff in the wrongful death action and there is no showing or contention that it is not.

The pleadings and affidavits in this record disclose no conflict as to the facts. The trial court and counsel for both parties recognized that the record presented no triable issue of fact and that the case was a proper one for the entry of a summary judgment. In our opinion, as indicated, the record of plaintiff's conviction of manslaughter in connection with the death of William A. Sandell presented no defense to the instant proceeding and under the authorities cited, defendant is bound, under the admitted facts disclosed by this record, by the judgment rendered in the wrongful death action.

■ With reference to including $2500 attorney fees, the affidavit of counsel for appellee set forth facts which warranted the trial court in including this amount in the summary judgment. The counteraffidavit filed by counsel for appellant did not make any issue of the amount of attorney fees. What counsel

said in this counteraffidavit was that he was a practicing attorney in Kane County, represented defendant in this action and had represented other insurance companies in matters involving insurance litigation. Affiant averred that defendant company refused to defend Gould in the wrongful death action and has refused to reimburse Gould for the amount of the judgment rendered against him in that action because the claim of the plaintiff, Gould, came within the exclusions set forth in the policy of insurance. As to attorney fees, counsel's affidavit stated: "Section 155 of the Insurance Code of Illinois provides in part for the allowance of attorney fees in the event an insurance company refused vexatiously and without reasonable cause to pay a loss but further provides that the allowance thereof shall not exceed $500; that there is no showing in this record that the refusal to pay the judgment and attorney fees claimed was done vexatiously or without reasonable cause and that the pleadings and affidavit show that the refusal was based on defendant's position that the act of the plaintiff was within the exclusions heretofore set forth."

 The section of the Insurance Code relied upon by counsel for appellant has no application to the question of allowance of attorney fees in the instant case. That section applies where a judgment has been obtained which the insurer is required to pay but which it vexatiously and without reasonable cause refuses to pay. The instant action is brought to reimburse the insured for the amount of a judgment rendered against him which he paid and to recover attorney fees which the insured incurred in defending an action which, under the provisions of the insurance contract, issued by the insurer, the insurer was obligated to defend. Here the insurer repudiated its obli-

gation by its refusal to take part in the defense of the wrongful death action and therefore is not now in a position to question the result of that action.

Appellant's refusal to defend the wrongful death action made it obligatory upon appellee to procure the services of an attorney and having done so, appellant is under the provisions of its contract, obligated to reimburse appellee for such attorney fees. Insurer's counteraffidavit with reference to attorney fees neither questions the amount sought to be recovered nor challenges the propriety of allowing an attorney fee.

The provisions of this insurance policy are not doubtful or difficult of interpretation. The conclusion arrived at by the trial court is reasonable and supported by the authorities. Its action in rendering the judgment appealed from is sustained by the record and is affirmed.

Judgment affirmed.

McNEAL and SMITH, JJ., concur.