**MATSUSHITA ELECTRIC CORPORATION OF AMERICA, Plaintiff,**

v.

**The HOME INDEMNITY COMPANY, a/k/a The Home Insurance Company, Defendant.**

No. 93 C 7721.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 16, 1995.

---

Robert Charles Moore, Bullaro, Carton & Stone, Chicago, Illinois, for plaintiff.

Elliott R. Schiff, Loretta M. Griffin, Jeffrey D. Corso, O'Connor, Schiff & Meyers, Chicago, Illinois, for defendant.

### CORRECTED MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff Matsushita Electric Corporation of America (Matsushita) brought this diversity action against The Home Indemnity Company (Home) for a declaratory judgment. The four-count complaint alleges that Home breached its duty to defend Matsushita in a personal injury action (count I); is estopped from denying coverage (count II); has waived all applicable policy defenses (count III); and that Matsushita is entitled to attorneys' fees because of Home's unreasonable and vexatious refusal to defend (count IV).

Before us now are two separate motions by Matsushita for partial summary judgment: one directed at counts I, II, and III, and another at count IV. Also before us is Home's cross-motion for summary judgment, and its motion to strike an affidavit submitted by Matsushita. For the reasons set forth below, Matsushita's motion for summary judgment is granted as to count I, denied as moot as to counts II and III, and denied as to count IV; Home's motion for summary judgment and its motion to strike the affidavit are denied.

### BACKGROUND

In 1990, Matsushita hired an architect, a developer and a general contractor, W.E. O'Neil (O'Neil), to build a new warehouse and office complex in Elgin, Illinois. O'Neil in turn hired several subcontractors, one of which, Price Brothers–Midwest (Price), was hired to manufacture and erect the pre-cast exterior walls. Although Price only manufactured the walls and hired a different subcontractor to erect the walls at the jobsite, it is undisputed that Price was primarily responsible for the construction of the pre-cast exterior walls. As part of its contract with Matsushita and O'Neil, Price was required to obtain an "owners and contractors protective policy of insurance" (OCP policy). Price obtained the required policy from Home, listing O'Neil and Matsushita as the insureds. The policy was primary; Home specifically disavowed any right of contribution from other insurers. The policy covered any property damage and bodily injury "arising out of" Price's operations at the Matsushita jobsite, including Matsushita's supervision of those operations, and required Home to defend any suit alleging such damages.

On November 16, 1990, Donald Speer, an employee of a different subcontractor, was paralyzed when a concrete wall collapsed at the jobsite. Soon thereafter, Donald and Linda Speer filed a lawsuit against Matsushita and several contractors (but not Price), claiming that they were responsible for Donald's injuries. Matsushita filed a third party complaint against Price, alleging that Price was responsible for the Speers' injuries because of its violations of the Structural Work Act. The Speer litigation was settled on February 4, 1993, for over $20 million.

On January 18, 1991, before settlement was reached in the Speer litigation, Matsushita tendered its defense to Home, claiming that the allegations in the Speer complaint arose out of Price's work at the jobsite. Despite Home's initial refusal to defend the Speer action, Matsushita continued to press Home for payment. Finally, on December 16, 1992, Home, under a reservation of rights, acknowledged that it had a duty to defend Matsushita. Nevertheless, Home has not to this date paid any of Matsushita's $328,000 in defense costs. Instead, those costs were paid by Matsushita's other insurers.[1]

Matsushita filed this action seeking a declaratory judgment that Home breached its duty to defend under the OCP policy, is estopped from denying coverage, has waived all applicable policy defenses, and must pay attorneys' fees Matsushita incurred during this case. Home responded with a motion to dismiss, claiming that Matsushita has failed to state a claim upon which relief can be granted. We denied that motion on August 31, 1994. Since then, Matsushita has filed two separate motions for summary judgment. The first is directed at Counts I, II and III, and the second is directed at Count IV. Home has filed a cross-motion for summary judgment, claiming that it is entitled to set off the amounts paid by Matsushita's other insurers, which would reduce the amount in controversy in this diversity action below the $50,000 jurisdictional minimum. Home has also moved to strike the affidavit of Patrick McCarthy, which Matsushita submitted in response to Home's motion for summary judgment.

## DISCUSSION

### A. Counts I, II, and III

#### 1. Home's Duty to Defend

■ It is well settled in Illinois that an insurer's duty to defend the insured is determined by the allegations made in the underlying complaint. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 161 Ill.Dec. 280, 284, 578 N.E.2d 926, 930 (1991). The insurer is under such a duty if the complaint filed against the insured alleges any facts that are within, or *potentially* within, the coverage of the policy. *Id.* Indeed, "[t]he insurer's duty to defend is broader than its duty to indemnify, and the insurer may be obligated to defend against actions which are not in fact covered under the policy." *Tews Funeral Home, Inc. v. Ohio Casualty Ins. Co.,* 832 F.2d 1037, 1042 (7th Cir.1987). In determining whether the complaint alleges facts covered under the policy, "[t]he underlying complaint and the insurance policy must be liberally construed in favor of the insured." *Attorneys' Title Guaranty Fund Inc. v. Maryland Casualty Co.,* No. 90 C 3916, 1991 WL 171339, at *3 (N.D.Ill. Aug. 23, 1991).[2] Finally, "[i]f several theories of recovery against the insured are alleged in the complaint, an insurer has the duty to defend even if only one such theory falls within potential coverage under the policy." *Shell Oil Co. v. AC & S, Inc.,* 271 Ill.App.3d 898, 208 Ill.Dec. 586, 590, 649 N.E.2d 946, 950 (1995).

■ In arguing that Matsushita's defense costs are not covered under the OCP policy, Home rehashes an argument that we rejected in denying its motion to dismiss: it claims that the Speer lawsuit could not "arise out of" Price's operations if Price was not named as a principal defendant. We again reject that argument. The OCP policy requires only that the damage arise out of Price's "operations." Thus, Home's duty to defend is not premised on Price's negligence. Moreover, the issue is whether the underlying complaint alleges *facts* that are potentially within the policy coverage. *United States*

---

1. The payments from the other insurance carriers is an issue that will be taken up *infra.*

2. The OCP policy to which Matsushita was added as an insured states that:

   [Home] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies … The

"bodily injury" or "property damage" must be caused by an "occurrence" and arise out of: (1) Operations performed for you by the "contractor" at the location specified in the Declarations; or (2) Your acts or omissions in connection with the general supervision of such operations.

*Fidelity & Guaranty Co.,* 161 Ill.Dec. at 284, 578 N.E.2d at 930. Thus we must examine the specific allegations of the Speer complaint, not just who was named as principal defendants. *See, Casualty Ins. Co. v. Northbrook Property & Casualty Ins. Co.,* 150 Ill.App.3d 472, 103 Ill.Dec. 495, 499, 501 N.E.2d 812, 816 (1986) (even though subcontractor was not named as a defendant in the underlying action, subcontractor's named insured was allowed to maintain a declaratory action for a breach of the duty to defend).

■ The complaint filed by Donald and Linda Speer alleged that the defendants (including Matsushita) violated the Illinois Structural Work Act and were negligent in allowing an interior block wall to collapse. Specifically, the Speer's second amended complaint states in part that "[d]efendants ... were then and there guilty of willful violations of the Structural Work Act in one. or more of the following ways: (a) failed to brace the block wall until the exterior walls were complete." The complaint also expressly challenged the defendants' supervision of the project, their scheduling of the construction work, and their inspection of the jobsite. Matsushita claims that these allegations are potentially within the policy coverage because they arise out of Price's operations in constructing the exterior walls and its failure in supervising Price's work to ensure that the exterior work was completed in a timely fashion to protect the interior block wall from the high winds that eventually caused it to collapse. Home responds that the Speer complaint does not arise out of Price's operations because the complaint's reference to the exterior walls only described a condition of the jobsite at. the time of the accident and did not implicate the exterior walls as a cause of the accident.

Home clearly had a duty to defend Matsushita in the Speer litigation. Matsushita need only demonstrate that the Speer complaint alleges facts that *potentially* arose out of Price's operations and Matsushita's supervision of those operations. An Illinois appellate court has determined that the phrase, "arise out of," is ambiguous, thus requiring a liberal construction in favor of the insured. *Casualty Ins. Co.,* 103 Ill.Dec. at 497, 501 N.E.2d at 814. *Casualty* further held that "arise out of" means "'originating from,' 'having originated in,' 'growing out of,' and 'flowing from.'" *Id.; accord Shell Oil Co.,* 208 Ill.Dec. at 592, 649 N.E.2d at 952. The allegation that the defendants should have braced the interior walls until the exterior walls were complete "flows from" Price's construction of the exterior walls. Moreover, the Speer complaint explicitly alleged that Matsushita failed to adequately supervise and inspect the jobsite, which included scheduling the completion of the exterior walls. This allegation potentially arises out of Matsushita's "acts or omissions in connection with the general supervision of such projects." There can be no doubt that Home was aware or should have been aware that the Speer lawsuit arose out of Price's operations. Matsushita first tendered its defense to Home on January 18, 1991. The second amended complaint, which contained the allegations referred to above, was filed on January 30, 1991. There is little doubt that once the second amended complaint was filed, Home was under a duty to defend Matsushita.[3] Finally, Matsushita has submitted transcripts of depositions taken during the summer of 1991 which demonstrate that the Speers were contending that the interior wall collapsed because the exterior walls had not yet been erected, and, indeed, some testimony indicated that the exterior walls were supposed to have been installed first, but Price was late in performing.[4] Therefore, because the Speer complaint alleges facts potentially within the coverage of the OCP policy, as became increasingly apparent as the discovery progressed, Home breached its

---

3. Matsushita alleges that the original complaint and the First Amended Complaint also contained language implicating Price's operations and Matsushita's supervision of those operations. However, Matsushita has failed to supplement the record with copies of those complaints. Thus, we do not rely on any allegations that may have been made in the earlier complaints.

4. It is immaterial that the exterior wall theory was only one of many theories pursued in the Speer lawsuit. *See, Shell Oil,* 208 Ill.Dec. at 590, 649 N.E.2d at 950.

duty under the policy by refusing to defend Matsushita in the underlying actions.[5]

### 2. *Home's Motion to Strike the Affidavit of Patrick McCarthy*

In response to Home's motion for summary judgment, Matsushita submitted the affidavit of Patrick McCarthy, its assistant general manager and risk manager. The affidavit focused on Home's claim to set off the amounts paid by other insurance carriers against any damages resulting from its refusal to defend Matsushita. In the affidavit, McCarthy describes the relationship that existed between Matsushita and one of its carriers, Tokio Fire and Marine Insurance Company (Tokio Marine). Home moves to strike this affidavit on the grounds that it alleges facts outside the affiant's personal knowledge, renders legal conclusions inappropriate for an affidavit, and is irrelevant.

In response to Home's Motion, Matsushita submitted an amended affidavit from McCarthy designed to address Home's concerns. In the amended affidavit, McCarthy clearly sets forth the basis of his personal knowledge of the facts that he attests to. Moreover, we do not believe that McCarthy's affidavit crosses the line from a statement of facts within his personal knowledge to legal argument. Finally, McCarthy's affidavit is clearly relevant to Home's claim for setoff. Therefore, Home's motion to strike the affidavit is denied.

### 3. *Home's Right of Setoff*

Matsushita tendered its defense to other insurance carriers as well including: Tokio Marine, American County, Northbrook Property & Casualty Company, National Surety Corporation (referred to as Fireman's Fund) and Liberty Mutual. Some of these carriers contributed money to Matsushita's defense.[6] These payments totaled over $300,000. In its motion for summary judgment, Home argues that even if it did breach its duty to defend, it is entitled to set off these pay-

ments against any damages claimed by Matsushita. Home further alleges that once this setoff is accounted for, the amount in controversy falls to $11,000, which would be below the $50,000 jurisdictional minimum.

We note at the outset that Home's request for a setoff is an inappropriate use of the term. In Illinois, a setoff "refers to the situations when a defendant has a distinct cause of action against the same plaintiff who filed suit against him" and is subsumed procedurally under the concept of counterclaim. *Hentze v. Unverfehrt*, 237 Ill.App.3d 606, 178 Ill.Dec. 280, 284–85, 604 N.E.2d 536, 540–41 (1992); *see, also, Bank of Chicago–Garfield Ridge v. Park National Bank*, 237 Ill.App.3d 1085, 179 Ill.Dec. 240, 244, 606 N.E.2d 72, 76 (1992), *appeal denied*, 149 Ill.2d 647, 183 Ill.Dec. 858, 612 N.E.2d 510 (1993). Home does not have a cause of action against Matsushita but, rather, is seeking a reduction in damages under the established principle that "[t]he purpose of contract damages 'is to place the non-breaching party in the position he would have been in had the contract been performed.'" *Id.* 178 Ill.Dec. at 285, 604 N.E.2d at 541 (quoting *Feldstein v. Guinan*, 148 Ill.App.3d 610, 101 Ill.Dec. 947, 949, 499 N.E.2d 535, 537 (1986)). Thus Home seeks to invoke the proposition that when there is a single injury, any payments made in compensation of that injury must be accounted for in any future damages action for that same injury. *See, YMCA of Warren County v. Midland Architects Inc.*, 174 Ill.App.3d 966, 124 Ill.Dec. 468, 471, 529 N.E.2d 288, 291 (1988) (in a breach of contract action in which the plaintiff suffered one indivisible injury, any payment made in compensation of that injury must be accounted for in any future breach of contract action).

Matsushita does not dispute that the four carriers made payments to its counsel. Rather, it claims that its damages should not be reduced by the amount of those payments. Because the Tokio Marine policy is funda-

---

5. Because we hold that Home breached its duty to defend we need not address Matsushita's alternative arguments that Home is estopped from denying coverage and has waived all policy defenses.

6. These other carriers were potentially liable through policies issued either to one of the other subcontractors involved in the Speer accident, the developer, the architect, O'Neil, or Matsushita.

mentally different from those issued by the other three carriers, we will examine the Tokio Marine payments first.

In securing coverage from Tokio Marine, Matsushita elected to pay the cost of the insurance retrospectively. That is, Matsushita did not pay for the coverage up-front, but agreed to pay after a period of time. The parties agreed on a "retrospective premium endorsement," which stated how the retrospective premium was to be paid. Determining the premium was a complicated arrangement that depended on a multitude of factors, one of which was the amount already paid by Tokio Marine under the terms of coverage. The payments made by Tokio Marine for the defense of the Speer litigation were included as part of its costs under the policy and consequently increased the amount that Matsushita was obligated to pay as part of the retrospective premium.

Home does not dispute that if Matsushita were obligated to repay the money paid by Tokio Marine, there would be little question that Home is not entitled to a reduction of damages. The question here is whether the answer changes because Matsushita did not repay the funds, but rather paid for Home's breach through an increased retrospective premium. We believe that it does not. The Supreme Court of Illinois has held that the damages recoverable in an action such as this are all costs that were proximately caused by the insurer's breach. *Conway v. Country Casualty Ins. Co.*, 92 Ill.2d 388, 65 Ill.Dec. 934, 938, 442 N.E.2d 245, 249 (1982). Home's breach proximately caused the increased retrospective premium—Matsushita was required to pay more to Tokio Marine than it would have had it not been for Home's breach. Moreover, Matsushita, as the non-breaching party, is entitled to be put in as good a position as it would have been absent Home's breach. *Feldstein*, 101 Ill.Dec. at 949, 499 N.E.2d at 537. If Home had not breached, Matsushita would have been liable for a significantly lower retrospective premi-

um to Tokio Marine.[7] Thus, by claiming that Matsushita would somehow reap a windfall if Tokio Marine's payment was not accounted for, Home simply ignores the consequences of its own breach.

■ The payments made by the other three carriers are a different matter—none of those policies contained a retrospective premium endorsement. Nevertheless, Matsushita claims that these payments should not serve to reduce its damages; it claims that it would be inequitable to allow Home to escape its liability under the policy by its bad faith breach of its duty to defend. We disagree. A breach of contract action is meant to compensate the plaintiff, not punish the defendant. *Feldstein*, 101 Ill.Dec. at 949, 499 N.E.2d at 537. If the plaintiff has been made whole, it has no further complaint. Reducing Matsushita's damages is not based on any equitable grounds susceptible to the doctrine of unclean hands. Rather, we focus solely on Matsushita's injury and whether it has been made whole.

Matsushita argues that the settlement payments from the other carriers were intended to compensate it for their respective breaches of their respective policies, and are severable from the injury occasioned by Home's breach. This argument mischaracterizes Matsushita's injury. Even assuming for the sake of argument that the other carriers, as well as Home, also originally refused to defend it (which this court need not decide at this point in the litigation), Matsushita suffered only one injury, non-payment of its defense costs, not the separate injuries (one for each alleged breach) claimed by Matsushita. Were Matsushita correct, it could in theory recover its full defense costs from each carrier. Such an argument runs directly counter to the traditional measure of damages for a breach of contract. *See, YMCA*, 124 Ill.Dec. at 471, 529 N.E.2d at 291. Since Matsushita has suffered only one injury, the

---

7. Home may yet be able to demonstrate that some portion of the payments made by Tokio Marine should serve to reduce Matsushita's damages. At this point it is a question of fact how much of Matsushita's payments to Tokio Marine resulted from Home's breach. We have assumed

to this point that the retrospective premium went up by the full amount of Tokio Marine's payment. However, if Home establishes that the increase in the premium was less than Tokio Marine's payment, we may reduce Matsushita's damages by that difference.

payments by the other carriers serve to reduce the damages it may collect from Home.

■ Matsushita's damages for Home's breach must be reduced by the payments made for Matsushita's defense costs by American, Northbrook, and Fireman's Fund. We cannot at this point evaluate what portion of these payments may be fairly attributed to Matsushita's defense costs. We must first determine what those defense costs are. In particular, we must decide whether Matsushita may recover on its claim for payment of fees it incurred in securing alternate defense cost coverage. We are mindful that in its settlement with American and Northbrook, Matsushita released those two carriers from all future liability. Thus, Matsushita is correct in asserting that any reduction of its damages must account for any interest or penalties that it was entitled to receive from the other carriers. We reject Matsushita's request to apportion the settlement proceeds in any manner of its choosing, but, instead, will reserve the factual question of apportionment for the court after further development by the parties.

In sum, because we hold that Tokio Marine's payments do not reduce Matsushita's damages to the extent that they increased the retrospective premium, we deny Home's Motion for Summary Judgment, alleging that the amount in controversy is below the $50,-000 jurisdictional minimum. However, we hold that some or all of the payments made by American, Northbrook, and Fireman's Fund may reduce Matsushita's damages for Home's breach of its duty to defend.

### B. *Count IV*

In Count IV, Matsushita seeks to recover the attorneys' fees it incurred in pursuing this action for declaratory relief. Matsushita relies on 215 ILCS 5/155 (Section 155), which allows an insured to recover attorneys' fees and a statutory penalty from its insurer in certain situations. Section 155 states:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the

court that such action or delay is vexatious and unreasonable, the court may award as part of the taxable costs in the action reasonable attorneys fees, other costs, plus an amount not to exceed any one of the following amounts:

> (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

> (b) $25,000;

> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of all costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

■ A wrongful denial of coverage is not enough by itself to support liability under Section 155. *See, A. Kush & Associates Ltd. v. American States Ins. Co.*, 927 F.2d 929 (7th Cir.1991). Indeed, an award under this section is not appropriate when there is a bona fide dispute as to coverage. *Morris v. Auto–Owners Ins. Co.*, 239 Ill.App.3d 500, 180 Ill.Dec. 222, 606 N.E.2d 1299, *appeal denied*, 151 Ill.2d 566, 186 Ill.Dec. 384, 616 N.E.2d 337 (1993). What is needed instead is some evidence indicating that the denial of coverage was unreasonable and vexatious. *Id.*

■ Although the typical Section 155 case involves a failure to indemnify, the Fifth District in *Richardson v. Illinois Power Co.*, 217 Ill.App.3d 708, 160 Ill.Dec. 498, 577 N.E.2d 823 (1991), has held that Section 155 also applies to a declaratory judgment action premised on a breach of the duty to defend. Home cites *Gould v. Country Mutual Casualty Co.*, 37 Ill.App.2d 265, 185 N.E.2d 603, 616 (1962) for the proposition that attorneys' fees for the latter type of action are governed by contract, not Section 155. We disagree. The basis for the court's decision in *Gould* is not clear from the opinion, but it appears that the court ruled that Section 155 did not apply because the insurer had not acted unreasonably and vexatiously. The court looked to the contract only because the statute did not apply. Home's broader reading of *Gould* is not persuasive given that in the

over thirty years since *Gould* no Illinois case has cited it for such an expansive proposition. Thus, in light of *Richardson,* we think Section 155 provides a remedy in actions such as the one Matsushita brings here. *See, also, Shell Oil Co.,* 208 Ill.Dec. at 593, 649 N.E.2d at 953 (Section 155 available to insured who maintained a declaratory judgment action alleging breach of the duty to defend).

A threshold problem, ignored by Matsushita, is that an award of damages under Section 155 is a question of fact based on the totality of the circumstances. *See, Green v. International Ins. Co.,* 238 Ill. App.3d 929, 179 Ill.Dec. 111, 605 N.E.2d 1125 (1992) (summary judgment was inappropriate because reasonableness of insurer's behavior is a question of fact); *Kohlmeier v. Shelter Ins. Co.,* 170 Ill.App.3d 643, 121 Ill.Dec. 288, 525 N.E.2d 94 (whether to award fees under Section 155 is a question of fact), *appeal denied,* 122 Ill.2d 576, 125 Ill.Dec. 219, 530 N.E.2d 247 (1988); *State Farm Fire & Casualty Ins. Co. v. Miceli,* 164 Ill.App.3d 874, 115 Ill.Dec. 832, 518 N.E.2d 357 (Ill.App.Ct. 1987) (same), *appeal denied,* 119 Ill.2d 575, 119 Ill.Dec. 398, 522 N.E.2d 1257 (1988). Matsushita implicitly argues that all facts are presently before the Court, thus enabling us to answer this question of fact on summary judgment. We agree with Home, however, that it is premature to rule on the issue of attorneys' fees. Whether fees are proper under Section 155 is based on the totality of the circumstances, which requires us to examine Home's conduct throughout this dispute. To that end we must examine Home's conduct when it was originally tendered the defense and explore its reasons for denying coverage for two years, then abruptly acknowledging a duty under a reservation of rights. In addition, we must examine the period in which Matsushita, Home, and the other carriers attempted to negotiate a settlement. Matsushita argues that Home's offer of a pro rata contribution to the defense costs is an example of its unreasonable conduct since it was always primarily liable under the OCP policy. However, Home's status with respect to the other carriers has yet to be determined, and we are mindful that other carriers were also primarily liable. Considering the factual nature of the Section 155 inquiry and considering the many issues that have yet to be resolved, it would be inappropriate to award fees at this time.[8]

## CONCLUSION

For the foregoing reasons, Matsushita's motion for summary judgment on count I is granted and its motion for summary judgment on count IV is denied as premature. Home's cross-motion for summary judgment is denied, but we leave open the question of a partial reduction of damages for the payments made by American, Northbrook, and

---

8. Matsushita argued in the alternative that Illinois common law recognizes a right to attorneys' fees for an insured who maintains an action for declaratory judgment against its insurer for a breach of the duty to defend. The caselaw examining this alleged common law right to fees is in considerable disarray. The main proponents of the existence of this right have been the federal courts, *see, National Cycle, Inc. v. Savoy Reinsurance Co.,* 938 F.2d 61, 64 (7th Cir.1991); *Green v. J.C. Penney Auto Ins. Co.,* 806 F.2d 759, 765 (7th Cir.1986); *Aetna Casualty & Surety Co. v. Spancrete of Illinois, Inc.,* 726 F.Supp. 204, 209 (N.D.Ill.1989), who have taken their lead from one Illinois appellate court decision. *See, Trovillion v. United States Fidelity & Guaranty Co.,* 130 Ill.App.3d 694, 86 Ill.Dec. 39, 44, 474 N.E.2d 953, 958 (1985). However, a contrary holding has come from every other Illinois court that has addressed this issue. *See, e.g., International Ins. Co. v. Chicago Heights,* 268 Ill.App.3d 289, 205 Ill.Dec. 698, 705, 643 N.E.2d 1305, 1312 (1994) (collecting cases), *appeal denied,* 161 Ill.2d 527, 208 Ill.Dec. 360, 649 N.E.2d 416 (1995); *Tuell v.*

*State Farm Fire & Casualty Co.,* 132 Ill.App.3d 449, 87 Ill.Dec. 469, 473, 477 N.E.2d 70, 74 (1985). Moreover, the lone Illinois decision recognizing a common law right, *Trovillion,* may have been implicitly overruled by the Fifth District when it ruled that an insured has a claim for fees under Section 155, when maintaining a declaratory judgment action premised upon breach of the duty to defend (since the common law right to fees seems not to require a showing of unreasonableness, it would swallow Section 155.) Our task, when sitting in diversity is to apply the law that the State Supreme Court would apply if presented with this issue. *Todd v. Societe Bic. S.A.,* 21 F.3d 1402, 1405 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 312 (1994). We cannot say with any confidence that the Illinois Supreme Court, if faced with this question, would agree with the federal courts instead of its own appellate courts. As a result, we examine Matsushita's right to fees under the requirements of Section 155 and reject any common law right to fees.

Fireman's Fund (but not Tokio Marine to the extent that they increased the retrospective premium) for further development by the parties. Home's motion to strike the affidavit of Patrick McCarthy is denied.