SHELL OIL COMPANY, Plaintiff-Appellee, v. AC&S, INC., *et al.*, Defendants (National Union Fire Insurance Company of Pittsburgh, PA., Defendant-Appellant).

Fifth District   No. 5—93—0170

Opinion filed April 20, 1995.

900

Stephen W. Thomson and Michael J. Bedesky, both of Reed, Armstrong, Gorman, Coffey, Thomas, Gilbert & Mudge, P.C., of Edwardsville, for appellant.

Stephen J. Maassen, of Hoagland, Fitzgerald, Smith & Pranaitis, of Alton, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Shell Oil Company, filed this declaratory judgment action against defendants, National Union Fire Insurance Company of Pittsburgh, PA (National Union), Transamerica Insurance Company (Transamerica) (hereinafter defendants), AC&S, Inc. (AC&S), and Sachs Electric Company (Sachs), seeking a determination of whether defendants had a duty to defend plaintiff in a suit by Gerald Neels, an employee of AC&S, for injuries sustained by Neels while working on plaintiff's premises. Gerald Neels, AC&S, Sachs, and Transamerica are not parties to this appeal.

Defendants appealed from a summary judgment order issued by the circuit court of Madison County in favor of plaintiff. The underlying cause of action filed by Neels was a personal injury suit based upon theories of premises liability. Plaintiff filed a declaratory judgment in response to defendants' failure to tender defense of the underlying claim to plaintiff. The trial court found that defendants had a duty to defend plaintiff in the underlying cause of action.

Defendants appealed the trial court's order, raising several issues, the thrust of which concerns whether defendants had a duty to

defend plaintiff in a lawsuit for injuries sustained by an employee of AC&S while he was on plaintiff's property. Transamerica Insurance Company's appeal was later dismissed. We affirm and remand for further proceedings.

## I

Plaintiff filed a complaint for declaratory judgment against AC&S and Sachs and their insurance carriers, National Union and Transamerica, alleging that defendants had a duty to defend, as well as indemnify, plaintiff as a result of a lawsuit filed against plaintiff by Neels for injuries he sustained while in the process of performing work on the premises of plaintiff. Neels was an employee of AC&S, a subcontractor of Sachs, which in turn was a subcontractor of Bechtel Constructors Corporation (Bechtel), plaintiff's general contractor for this project. The Sachs-AC&S contract incorporated by reference the Shell-Bechtel contract. Pursuant to their contractual requirements, AC&S and Sachs each obtained comprehensive general liability and workers' compensation insurance that named plaintiff as an additional insured. AC&S obtained insurance coverage with National Union as the carrier. Transamerica provided coverage for Sachs.

The acts that are the subject matter of the underlying complaint occurred on January 26, 1988. Neels, an AC&S employee, was at plaintiff's Alkylation Unit to perform some insulation work as part of his employment for AC&S pursuant to AC&S's agreement with Sachs. Neels, while walking back to the AC&S work trailer, tripped over a pipe and sustained injuries. As a result of the injuries incurred, Neels filed a workers' compensation claim against AC&S. Subsequently, Neels filed a complaint against plaintiff, alleging in part that Neels was an employee of AC&S and was on the premises of plaintiff in the course of and in furtherance of his employment.

Plaintiff tendered defense of the underlying claim to Sachs and to AC&S and their insurance carriers in November 1991. Transamerica denied a defense on the basis that Illinois is an "anti-indemnity" State. National Union failed to respond to plaintiff's tender of defense. In response to Transamerica's denial of a defense and National Union's failure to respond to the tender of defense, plaintiff filed this declaratory judgment action, seeking a determination that Transamerica and National Union owed plaintiff, an additional insured, a defense and coverage for the Neels lawsuit. The parties filed a stipulation of facts, and later plaintiff and defendants submitted the cause on separate motions for judgment on the pleadings or, in the alternative, motions for summary judgment.

The court heard arguments on the summary judgment motions filed by plaintiff and defendants and on November 25, 1992, entered an order denying the motions for summary judgment filed by defendants. The trial court found that under the reasoning of *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 466 N.E.2d 1091, defendants had a duty to defend plaintiff based on the pleadings filed in the underlying action by Neels against plaintiff. The court then granted summary judgment to AC&S and Sachs, dismissing them from the case. The court deferred ruling on the duty to indemnify, pending the outcome of the Neels lawsuit.

Contrary to the trial court's ruling that defendants were required to defend plaintiff in the Neels lawsuit, defendants did not provide or participate in the defense of plaintiff when the underlying cause proceeded to trial. Rather, defendants filed motions to reconsider the trial court's order granting summary judgment in favor of plaintiff. In the interim, the Neels trial resulted in a verdict for defendant, plaintiff in the instant case, in December 1992. The trial court denied defendants' motions to reconsider on February 11, 1993. Defendants appealed from the trial court's denial of their motions to reconsider. Transamerica's appeal was later dismissed.

## II

National Union first asserts that it had no duty to defend plaintiff in the Neels lawsuit because the underlying complaint did not allege any facts that would bring it within the scope of potential coverage. We disagree.

■ Under Illinois law, when a liability insurer questions whether the insured's claim might possibly fall within the scope of the policy coverage, the insurer must either (1) seek a declaratory judgment as to its rights and obligations before or pending trial or (2) defend the insured under a reservation of rights. (*La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 453, 408 N.E.2d 928, 935.) When an insured tenders defense to an insurer, the insurer may not simply refuse to participate in the litigation and wait for the insured to institute litigation against the insurer to determine the insurer's respective rights and duties. (*Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694, 698, 474 N.E.2d 953, 956.) Further, when the insurer refuses to tender a defense to its insured or fails to take either of the aforementioned actions, the insurer is barred from disputing policy coverage in a subsequent lawsuit by the insured. *La Rotunda*, 87 Ill. App. 3d at 453, 408 N.E.2d at 935.

National Union did not respond to plaintiff's tender of defense in the underlying lawsuit. National Union only responded upon

plaintiff's institution of the declaratory judgment action at issue here. National Union, which insured AC&S under both a workers' compensation policy and a general comprehensive policy, now states, as the reason for its failure to respond and tender a defense to plaintiff, that the comprehensive general liability coverage for plaintiff's tort liability cannot be triggered solely by the filing of a workers' compensation claim by Neels against AC&S and that plaintiff made no claim against the comprehensive general liability policy within the effective policy dates. Consequently, since there was never any claim brought against the comprehensive general liability policy during the policy period, the Neels lawsuit against plaintiff cannot "relate back" to the workers' compensation claim brought under a completely different insurance policy. Furthermore, National Union states that the "arising out of" language appearing on the certificate of insurance was not drafted by National Union but rather by plaintiff. Therefore, according to National Union, any ambiguities in the phrase "arising out of" should be construed against plaintiff, the drafter of this language.

■ As noted above, a serious dispute existed between plaintiff and National Union with respect to whether the claim might possibly fall within the scope of the policy coverage. Nevertheless, with plaintiff facing impending litigation premised on a claim that might potentially fall within policy coverage and hence give rise to National Union's duty to defend plaintiff, National Union failed to either seek a declaratory judgment as to its rights and obligations before or pending trial or defend plaintiff under a reservation of rights. If National Union believed it had a valid case of noncoverage, it should have taken appropriate action. Instead, National Union waited until plaintiff brought a declaratory judgment action to determine the question of potential coverage and duty to defend. Even after the trial court found that National Union owed plaintiff a defense, National Union continued to refuse to participate in plaintiff's defense. Having failed to take the necessary legal action prior to plaintiff's declaratory judgment action, National Union is now estopped from disputing the question of coverage.

### III

Next, National Union contends that the trial court improperly relied on *Maryland Casualty* in construing the "arising out of" language found in the certificate of insurance and subcontract and thereby improperly found that the underlying complaint fell within policy coverage giving rise to National Union's duty to defend plaintiff. We disagree.

■ To determine whether an insurer has a duty to defend its insured, the court is to look to the allegations of the underlying complaint. (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930.) The duty to defend arises if the underlying complaint alleges facts within or potentially within policy coverage. (*Wilkin Insulation Co.*, 144 Ill. 2d at 73, 578 N.E.2d at 930.) The insurer is required to defend even if the allegations may be groundless, false, or fraudulent. (*Wilkin Insulation Co.*, 144 Ill. 2d at 73, 578 N.E.2d at 930.) The threshold that the complaint must satisfy to present a claim of potential coverage is low. (*Trovillion*, 130 Ill. App. 3d at 700, 474 N.E.2d at 957.) The underlying complaint must be construed liberally with all doubts resolved in favor of the insured. (*Wilkin Insulation Co.*, 144 Ill. 2d at 74, 578 N.E.2d at 930; *Trovillion*, 130 Ill. App. 3d at 700, 474 N.E.2d at 957; *La Rotunda*, 87 Ill. App. 3d at 451, 408 N.E.2d at 933.) Additionally, "An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis omitted.) (*Wilkin Insulation Co.*, 144 Ill. 2d at 73, 578 N.E.2d at 933.) If several theories of recovery against the insured are alleged in the complaint, an insurer has the duty to defend even if only one such theory falls within potential coverage under the policy. *Wilkin Insulation Co.*, 144 Ill. 2d at 73, 578 N.E.2d at 933; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.

To determine whether the alleged facts suggest policy coverage, we must compare the complaint with the policy. (*La Rotunda*, 87 Ill. App. 3d at 452, 408 N.E.2d at 934.) The certificate of insurance issued by each defendant uses essentially similar language that names plaintiff and Bechtel as additional insureds and provides insurance coverage for claims arising from Sachs' and AC&S's operations at plaintiff's Alkylation Unit. The key language for determining potential coverage and the duty to defend is the phrase "arising out of." The trial court relied on *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 466 N.E.2d 1091, to construe this phrase and to determine whether the facts alleged fall within the scope of potential policy coverage, thereby giving rise to defendants' duty to defend.

In *Maryland Casualty*, the insured (Demos) leased three newsstand sites from Chicago and North Western Transportation Company at the company's passenger terminal. Demos had a comprehensive general liability policy with Maryland Casualty that named Chicago and North Western as an additional insured. (*Mary-*

*land Casualty*, 126 Ill. App. 3d at 151, 466 N.E.2d at 1092.) Shortly after 5 a.m., a Demos employee arrived at the passenger terminal to begin work. About 10 feet from her employer's office door, an assailant grabbed her around the neck from behind and led her back to a stairwell on Chicago and North Western's property, where the employee was assaulted and raped. The employee subsequently initiated an action against Chicago and North Western, alleging that Chicago and North Western was negligent in controlling and maintaining the passenger terminal and that its negligence was the proximate cause of her attack and resulting injuries. Chicago and North Western tendered the defense of the suit to Maryland Casualty, which defended under a reservation of rights. Maryland Casualty then initiated a declaratory judgment action seeking a determination of its rights and obligations with respect to its duty to defend and indemnify Chicago and North Western in the underlying action.

Maryland Casualty argued that the attack did not arise from her employer's use of the premises but from her mere presence in the terminal, a public place. The comprehensive general liability policy provision in contention named Demos as the insured and Chicago and North Western as an additional insured, " 'but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises *** leased to the named insured ***.' " Thus, the *Maryland Casualty* court had to consider whether the attack arose " 'out of the ownership, maintenance or use' of the designated leased premises." (*Maryland Casualty*, 126 Ill. App. 3d at 154, 466 N.E.2d at 1093-94.) The *Maryland Casualty* court concluded, "The phrase 'arising out of' is both broad and vague, and must be liberally construed in favor of the insured; accordingly, 'but for' causation, not necessarily proximate causation, satisfies this language." (126 Ill. App. 3d at 154.) The court went on to state:

> "[B]y construing the policy liberally in favor of the insured—a procedure necessitated by the ambiguity of the 'arising out of' language—the instant injuries appear to have arisen from the operation and use of the leased premises, since they would not have been sustained 'but for' the victim's employment on those premises. *** The policy, therefore, reasonably must be construed to cover any risks attendant upon her presence there resulting from C&NW's negligence and thereby activates Maryland's duty to defend C&NW." *Maryland Casualty*, 126 Ill. App. 3d at 155, 466 N.E.2d at 1094.

National Union emphatically argues that the trial court's reliance on *Maryland Casualty* was improper because the contract here specifically limited coverage to work performed by Sachs and AC&S

and that the pipe Neels tripped over had nothing to do with the work being performed by either Sachs or AC&S. Furthermore, National Union insists that it did not draft the "arising out of" language and that if this language is vague and ambiguous, it should be construed against plaintiff, its drafter. We disagree with these contentions and adopt the analytical framework of *Maryland Casualty.*

In the instant case, the contract to which both Sachs and AC&S are parties stipulates the insurance coverage subcontractors are required to maintain. Section SC—2, "Insurance Requirements," subsection (C)(c), is relevant here. The provision states:

> "C. The policy of insurance which affords Comprehensive General Liability shall contain a provision or endorsement stating that such insurance:
>
> * * *
>
> c. includes OWNER and CONTRACTOR as additional insureds as regards their liability *arising out of operations* performed for OWNER and CONTRACTOR by SUBCONTRACTOR under this Subcontract." (Emphasis added.)

Consistent with the above requirement, the certificate of insurance uses similar language. The certificate of insurance issued by National Union states, "Shell Oil, Bechtel Engineering and Sachs Electric are named as additional insureds as defined in the policy with respect to claims arising from AC&S's operations at Shell Oil, Alky Unit, Roxana, Illinois ***."

■ In construing the phrase "arising out of," we adopt the definition set forth by the court in *Maryland Casualty.* There, the court held "arising out of" to mean "originating from," "having its origin in," "growing out of," and "flowing from." (*Maryland Casualty*, 126 Ill. App. 3d at 154, 466 N.E.2d at 1094, citing *Western Casualty & Surety Co. v. Branon* (E.D. Ill. 1979), 463 F. Supp. 1208, 1210.) Consonant with this definition, a "but for" causation analysis is applied to the facts in the instant case.

Neels was employed as a pipe insulator for AC&S. AC&S's employees were on plaintiff's premises pursuant to the subcontract between Sachs and AC&S. Neels was on plaintiff's premises in the course of and in furtherance of his employment with AC&S. Neels' injuries are alleged to have occurred when he tripped over a pipe transversing a gravel walkway he was using to return to AC&S's work trailer, located on plaintiff's premises. Neels used this particular walkway because he was in that vicinity doing an insulation job for his employer, AC&S. Construing the complaint and policy liberally and resolving all doubts in favor of the insured, we conclude that the facts alleged reasonably fall within policy coverage. Neels'

injuries appear to have arisen from the operations of AC&S and Sachs on plaintiff's premises. The injuries would not have occurred "but for" Neels' employment by AC&S and AC&S's presence on plaintiff's premises. We find that because the underlying complaint alleged facts that fall within or potentially within policy coverage, National Union had a duty to defend plaintiff in the underlying lawsuit. Hence, National Union unjustifiably refused to defend plaintiff in the underlying suit.

## IV

National Union also argues that the trial court erroneously converted a claims-made policy into an occurrence policy. Plaintiff points out that Neels filed a workers' compensation action against AC&S prior to filing its claim against National Union, but within National Union's policy period. Plaintiff contends that the workers' compensation filing constituted a claim for "damages because of 'bodily injury'" under the terms of the policy. National Union argues that the workers' compensation claim was for benefits and that it was necessary for the claim to have been made under the comprehensive general liability policy rather than under the workers' compensation policy.

■ National Union's comprehensive general liability policy provides, in pertinent part:

"This insurance applies to 'bodily injury' and 'property damage' only if a claim for damages because of the 'bodily injury' or 'property damage' is first made against *any insured* during the policy period.

(1) A claim by a person or organization seeking damages will be deemed to have been made when notice of such claim is received and recorded by *any insured* or by us, whichever comes first." (Emphasis added.)

We conclude that the workers' compensation claim was a claim for damages because of bodily injury, under the policy, and it was obviously made within the appropriate time period. In addition, paragraph two of the limitation section provides:

"(2) All claims for damages because of 'bodily injury' to the same person *** will be deemed to have been made at the time the first of those claims is made against *any insured*." (Emphasis added.)

Under the policy, the tort claim filed with National Union relates back to the workers' compensation claim previously filed.

■ We further reject National Union's argument that the tort claim had to be filed against National Union on this particular insurance policy in order for coverage to apply. The policy requires only

that claims will be deemed to have been made at the time the first claim is made against *any insured*. AC&S is an insured. There is no requirement that the first claim for bodily injury be filed on this particular National Union insurance policy, or even against a particular insured. Therefore, we conclude that the trial court properly rejected National Union's disclaimer of coverage that was based on the claims-made provisions of the policy.

## V

We next direct our attention to the issue of attorney fees. Plaintiff contends that it is entitled to attorney fees with respect to the declaratory judgment action it was forced to institute and for the underlying lawsuit in which National Union failed to participate, thereby obliging plaintiff to provide for its own defense. We agree that plaintiff is owed attorney fees pursuant to section 155 of the Illinois Insurance Code. Ill. Rev. Stat. 1991, ch. 73, par. 767.

■ Our General Assembly has provided a remedy to insureds who encounter unnecessary difficulties resulting from an insurance company's unreasonable and vexatious refusal to honor its contract with an insured. (*Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373; *Richardson v. Illinois Power Co.* (1991), 217 Ill. App. 3d 708, 711, 577 N.E.2d 823, 826.) Section 155 of the Illinois Insurance Code applies when an insurance carrier refuses to defend an insured. Section 155 provides:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

(2) Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on

such policies." Ill. Rev. Stat. 1991, ch. 73, par. 767 (now 215 ILCS 5/155 (West 1992)).

This statutory penalty is properly applied against an insurer when the insurer's refusal to defend is found to be vexatious and unreasonable. (*Richardson*, 217 Ill. App. 3d at 711, 577 N.E.2d at 825.) What constitutes a vexatious and unreasonable refusal is a matter for the trial court's determination. *Richardson*, 217 Ill. App. 3d at 711, 577 N.E.2d at 826.

■ In the instant case, National Union failed to tender a defense to plaintiff upon notification of the underlying lawsuit. Instead of taking the appropriate legal action to determine its rights and obligations, National Union chose to wait until plaintiff instituted the present declaratory judgment action. Even after the trial court found that National Union owed plaintiff a defense in the Neels lawsuit, National Union steadfastly refused to tender a defense to plaintiff. This court has stated previously, "it would defeat the purpose of the statute [section 155] to allow an insurer to escape any penalty when it fails to provide one of the most important benefits of a liability policy—a defense." (*Richardson*, 217 Ill. App. 3d at 711, 577 N.E.2d at 826.) We therefore remand this cause to the circuit court for a determination and award to plaintiff of a reasonable attorney fee incurred in defending the underlying lawsuit and in prosecuting the declaratory judgment action.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed and the cause is remanded for further proceedings.

Affirmed and remanded.

WELCH and CHAPMAN, JJ., concur.