May 9, 1997
5th Division



1-96-0351

MOBIL OIL CORPORATION, a foreign corporation, ) Appeal from
the
 ) Circuit Court of 
 Plaintiff-Appellee, ) Cook County.
 )
 v. ) 
 ) 
MARYLAND CASUALTY COMPANY, a foreign )
corporation, and NORTHERN INSURANCE COMPANY OF )
NEW YORK, a foreign corporation, ) Honorable
 ) Kenneth L. Gillis,
 Defendants-Appellants. ) Judge Presiding.


 PRESIDING JUSTICE HARTMAN delivered the opinion of the court:
 Defendants Maryland Casualty Company (Maryland) and Northern
Insurance Company of New York (Northern) appeal the circuit court's
grant of summary judgment in favor of plaintiff, Mobil Oil
Corporation (Mobil), finding defendants liable for Mobil's
attorneys fees pursuant to section 155 of the Insurance Code (215
ILCS 5/155(1) (West 1992)) (section 155), and awarding Mobil
$442,762 in such fees. Mobil incurred these fees in two separate
actions: a tort claim in which Maryland, after initially agreeing
to defend Mobil under two liability insurance policies, later
disputed the policy limits and advised Mobil to retain separate
counsel, which it did; and a declaratory judgment action, in which
Mobil claimed that the policies obligated defendants to indemnify
Mobil for any liability incurred in the tort claim.
 The insurance policies were purchased by a third party, B.M.W.
Constructors, Inc. (B.M.W.), the named insured, as part of a
contract for the repair of a flare system at Mobil's oil refinery
in Joliet, Illinois. The contract required B.M.W. to obtain
liability insurance that would cover any work performed by B.M.W.
at the refinery. For liability stemming from bodily injury, B.M.W.
was required to obtain a minimum of $250,000 in coverage for each
occurrence, and a minimum of $500,000 in aggregate coverage. The
contract also required that B.M.W. obtain liability insurance
naming and covering Mobil and any of Mobil's affiliates, under the
policies "as their interests may appear." 
 B.M.W. procured the insurance from its insurance
representative, with coverage to be provided by Northern, a
subsidiary of Maryland. The policies provided coverage for general
liability, automobile liability, and excess liability. The general
liability policy offered $1 million in coverage for each occurrence
and a maximum of $6 million in coverage for aggregate liability. 
The excess liability policy provided up to $5 million in coverage. 
In July 1988, B.M.W. sent Mobil the certificate of coverage
received from Northern for these policies, as required by Mobil's
contract with B.M.W. The certificate listed B.M.W. as the insured
party and added Mobil "as an additional insured as their interests
may appear." The certificate made no reference to the contract
between B.M.W. and Mobil.
 On September 17, 1988, two B.M.W. employees, Steve Cibulskis
and Marvin Lamar, were injured as they performed repair work at the
Joliet refinery. They and their spouses filed suit against Mobil
in the circuit court of Cook County, No. 90-L-3410 (Cir. Ct. Cook
Co.) (Cibulskis lawsuit). Mobil tendered its defense to Maryland
which, in April 1989, unconditionally accepted Mobil's tender,
hired a law firm to defend the Cibulskis lawsuit, and informed the
law firm that, under the general liability policy, Mobil was
entitled to up to $2 million in coverage. 
 In a subsequent letter to one of the underlying plaintiff's
attorneys, Maryland's claim representative stated that Maryland had
accepted Mobil's tender of its defense and that further
correspondence regarding the claim should be forwarded to Maryland.
 The parties to the Cibulskis lawsuit spent the next few years
conducting discovery and preparing for trial. Maryland's trial
attorney settled with Lamar, who was not severely injured, and
continued to prepare for the claims by Cibulskis and his wife. In
a response to one of the underlying plaintiffs' interrogatories
regarding insurance coverage, Mobil's answers, prepared by
Maryland's appointed defense counsel, stated that Mobil was covered
by two insurance policies, with policy limits of $1 million and $5
million, which was submitted to those plaintiffs by Maryland's
trial attorney on April 15, 1991. In two pretrial reports,
Maryland's trial attorney recommended that the Cibulskis' case be
settled for approximately $1.5 to $2 million. 
 After extensive discovery had been completed, with some 33
depositions taken and expert witnesses engaged, Maryland told Mobil
in a letter dated December 16, 1991, that the insurance policies
provided Mobil with only $250,000 in coverage, because the contract
between Mobil and B.M.W., mentioned that sum. That contract was
never made part of the rider or policy. Maryland further advised
Mobil to retain its own defense counsel in the Cibulskis lawsuit to
protect its interests in the event that Mobil's liability for the
claim exceeded $250,000. On February 6, 1992, Mobil responded to
Maryland's letter, noting that it was entitled to the full amount
of coverage, $6 million, as an additional insured under the
insurance policies. In a written reply, Maryland reiterated its
position that Mobil was entitled only to $250,000 in coverage. 
 Mobil hired its own attorney for the Cibulskis lawsuit on
March 24, 1992, who filed a complaint against Maryland, Northern,
and B.M.W. in chancery, seeking a declaration that the insurance
policies provided full coverage to Mobil as an additional insured,
and obligated the above-named defendants to indemnify Mobil in the
Cibulskis lawsuit. Mobil also filed a third-party complaint
against B.M.W., which was dismissed.
 On March 12, 1993, Maryland wrote Mobil stating, in effect,
that the insurance company had reconsidered its position, and
agreed to provide Mobil full coverage under the insurance
policies. Maryland refused, however, to pay any legal fees
already incurred by Mobil's attorneys in the Cibulskis lawsuit. 
 Mobil's attorney continued to prepare for trial. She
repeatedly disagreed with Maryland's trial attorney regarding how
and when the Cibulskis lawsuit should be resolved. Mobil's
attorney sent several letters to this trial attorney, asking him to
settle the lawsuit, because Mobil believed that a trial judgment
might exceed the policy limits. The first letter, dated February
15, 1993, asked the attorney to accept the Cibulskis' offer to
settle the case for $5.5 million, because they planned to seek
punitive damages at trial which, if awarded, might be much higher
than the current settlement offer. A letter sent on May 14, 1993
by Mobil's attorney requested that Maryland accept the reduced
offer of $3,750,000. A third letter, dated June 14, 1993, asked
that Maryland accept a $2,250,000 offer, and accused Maryland of
acting in bad faith by refusing to settle the case, asserting that
Mobil could be subject to much greater liability if the case
proceeded to trial. On July 30 and August 23, 1993, Mobil sent
letters to Maryland's attorneys in the declaratory judgment action,
warning that Mobil would sue Maryland for any amount awarded to the
Cibulskis that exceeded the policy limits. 
 In an August 6, 1993 letter, Maryland assured Mobil that it
was willing to negotiate a fair and reasonable settlement, but
disputed Mobil's contention that it should be responsible for
paying any punitive damage award. On August 23, Mobil responded by
asking why Maryland refused to accept the Cibulskis' most recent
settlement offer of $2 million. Mobil's attorney reminded Maryland
that its own trial attorney had recommended a settlement in the
area of two million dollars, and had concluded that the case should
be settled.
 On August 27, 1993, after the circuit court held a pretrial
conference with the parties to the Cibulskis lawsuit, Mobil's
attorney again wrote Maryland requesting that it accept the
Cibulskis' settlement offer, which now stood at $1,800,000. The
attorney noted the court's comment that two million dollars was a
reasonable settlement offer in light of the evidence that would be
presented at trial. The attorney further accused Maryland of
acting in bad faith by refusing to settle the case, and again
threatened to sue Maryland if a judgment against Mobil exceeded the
policy limits. The case went to trial that day. Several days
later, on September 2, 1993, Maryland's trial attorney finally
agreed to settle the case for $1.75 million. 
 In the declaratory judgment action against Maryland and
Northern, Mobil filed an amended complaint just before the
Cibulskis lawsuit was settled. Count one alleged that defendants
Maryland, Northern, and B.M.W. were obligated to indemnify Mobil in
the Cibulskis lawsuit, and must pay for the costs of trial and any
settlement or judgment entered against Mobil. Count two stated a
claim against B.M.W. for breach of contract, seeking as damages the
attorney's fees and costs incurred by Mobil in defending the
Cibulskis lawsuit and litigating the declaratory judgment action.
 The circuit court granted B.M.W.'s motion to dismiss Mobil's
amended complaint as to B.M.W. Mobil moved for summary judgment
against Maryland and Northern, seeking payment of attorneys' fees
pursuant to section 155 of the Insurance Code. Mobil asserted the
language of the insurance policies unambiguously established that
the insurance defendants had a duty to indemnify Mobil for up to $6
million in liability. 
 After the Cibulskis lawsuit was settled, with Maryland paying
the costs of the settlement, the circuit court chancery division
transferred the case to the law division, the only remaining issue
being Maryland's liability to Mobil for Mobil's attorney's fees. 
Mobil unsuccessfully moved for leave to file a jury demand, which
was found to be untimely. Maryland moved to dismiss Mobil's
complaint. Mobil's summary judgment motions for attorney's fees
were still pending.
 At a hearing on the motions before the law division court,
Mobil argued that Maryland's attorneys in the Cibulskis lawsuit
were placed in a conflicting position when Maryland changed its
position on the coverage issue, by reducing it to $250,000, which
potentially prevented them from zealously defending Mobil, and by
Maryland's assertion that the policy did not cover punitive damage
awards. Maryland urged the record offered no evidence to support an
inference that Maryland's attorney did not vigorously defend the
suit. Maryland further argued that it acted in good faith when it
refused to settle the case until the Cibulskis made a more
reasonable settlement demand. 
 Finding that the facts of the case were not in dispute, the
circuit court denied Maryland's motion to dismiss and granted
Mobil's summary judgment motion. The court determined that
Maryland's position limiting the extent of coverage to $250,000
could have affected its trial attorney's decision not to settle the
lawsuit, and to chance a not guilty verdict at trial. The court
observed that such a position conflicted with Mobil's, which now
faced potential liability for any damages arising above $250,000,
as well as being subject to punitive damages in a significant
amount, thereby impelling Mobil to seek settlement of the
Cibulskis' claim. Therefore, two sets of counsel were needed to
represent the conflicting interests of Maryland to try the case and
Mobil to settle it. The court further found that Maryland acted in
bad faith when it changed its position on the policy limits issue
and limited Mobil to only $250,000 in coverage. The court held
that Maryland was liable for attorney's fees incurred by Mobil in
both the Cibulskis lawsuit and the current declaratory action. The
court subsequently denied Maryland's motion to reconsider its
ruling. 
 The circuit court next discussed the issue of the amount of
attorney's fees for which Maryland should be held liable. Inviting
the parties to suggest the procedure to be followed in resolving
that issue, the court thereafter announced that it would review
Mobil's claim for fees, Maryland's objections to those fees, hold
a hearing with respect to the fees, and thereafter enter a ruling. 
Maryland was invited to make any objection to this procedure, but
stated through its counsel that it had none.
 In documents submitted to the circuit court, Mobil claimed its
attorneys billed $461,143 for work performed both in the Cibulskis
lawsuit and in the current declaratory action. The court convened
a hearing on Mobil's petition for attorney's fees and Maryland's
objections thereto. Both parties were invited to present any
further support for their respective, previously filed submissions;
each elected to stand upon their documents. Mobil's counsel
represented to the court that she was Mobil's trial lawyer in the
underlying personal injury case, the chancery division aspect of
the case, and the law division phase of the case and had personal
knowledge as to almost everything asserted. Maryland made no
effort to adduce any testimony from this, or any other, Mobil
attorney as to the amount of fees claimed and offered no testimony
of its own. Maryland made ten specific, written objections to
these claims. The court sustained several of Maryland's
objections, struck 127 hours of work from Mobil's claim, and
entered judgment in the amount of $442,762.93. Maryland appeals.
 I
 The parties disagree on the appropriate standard of review to
be applied in this case. In deciding the summary judgment motion,
the circuit court was authorized to consider the pleadings,
affidavits, deposition transcripts, and other evidentiary documents
in order to determine whether the parties presented a genuine issue
of material fact. 735 ILCS 5/2-1005(c) (West 1994); In re Estate
of Davis, 225 Ill. App. 3d 998, 1000, 589 N.E.2d 154 (1992). 
Summary judgment will be granted where there are no genuine issues
of material fact and the movant is entitled to judgment as a matter
of law. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154
Ill. 2d 90, 102, 607 N.E.2d 1204 (1992). 
 In the present case, the circuit court considered the issue of
whether Maryland was liable for attorney's fees as a matter of law
under section 155. The court properly so considered this aspect of
Mobil's motion for summary judgment, and appellate review of its
order granting Mobil's motion is de novo. Kleinwort Benson North
America, Inc., v. Quantum Financial Services, Inc., 285 Ill. App.
3d 201, 209, 673 N.E.2d 369 (1996); Outboard Marine, 154 Ill. 2d at
102; Zoeller v. Augustine, 271 Ill. App. 3d 370, 374, 648 N.E.2d
939 (1995). 

 A
 Maryland first argues that it was not liable as a matter of
law for attorney's fees incurred by Mobil in the Cibulskis lawsuit
after Maryland informed Mobil of the policy limits dispute. 
Section 155 of the Insurance Code provides for the award of
attorney's fees in cases where the insurer caused "an unreasonable
delay in settling a claim, and it appears to the court that such
action or delay is vexatious and unreasonable." An insurer is not
liable for attorney's fees under section 155 merely because it
litigated, and lost, the issue of insurance coverage. Buais v.
Safeway Insurance Co., 275 Ill. App. 3d 587, 591, 656 N.E.2d 61
(1995) (Buais); Myrda v. Coronet Insurance Co., 221 Ill. App. 3d
482, 489, 582 N.E.2d 274 (1991) (Myrda). If the insurer is found
to be vexatious and unreasonable in refusing to defend a claim,
however, section 155 authorizes the court to award fees and costs. 
Buais, 275 Ill. App. 3d at 591; Shell Oil Co. v. AC & S, Inc., 271
Ill. App. 3d 898, 909, 649 N.E.2d 946 (1995) (Shell Oil). The
determination of whether an insurer's actions are vexatious and
unreasonable must be determined after examining the totality of
circumstances. Green v. International Insurance Co., 238 Ill. App.
3d 929, 935, 605 N.E.2d 1125 (1992). To be considered are the
insurer's attitude, whether the insured was forced to file suit to
recover, and whether the insured was deprived of the use of its
property. If a bona fide dispute existed regarding the scope of
the insurance coverage, an insurer's delay in settling the claim
may not violate section 155. Verbaere v. Life Investors Insurance
Co. of America, 226 Ill. App. 3d 289, 297-98, 589 N.E.2d 753 (1992)
(Verbaere). 
 It is undisputed in this case that Maryland initially agreed
to defend Mobil, and acknowledged that Mobil was entitled to full
coverage under the insurance policies. Mobil hired separate legal
counsel only after Maryland decided, two years and eight months
after first agreeing to defend Mobil unconditionally, that the
policy limits were $250,000 instead of $6 million. Maryland even
suggested that Mobil retain its own attorney in the underlying
suit. 
 Maryland argues that a bona fide dispute existed regarding the
extent of Mobil's coverage, claiming it relied on B.M.W.'s
assertion that it never intended to provide Mobil with more than
$250,000 in coverage, but did so because B.M.W. later refused to
sign an affidavit stating its intentions. Maryland contends that
the certificate of insurance supports this argument because it
states that Mobil is insured only "as their interests may appear." 
Based upon this evidence, Maryland claims the insurance policies
were subject to reformation to reflect the true intentions of the
parties, which assertedly were to provide only $250,000 in
coverage. Alternatively, Maryland argues that a bona fide dispute
existed regarding whether Mobil was entitled to any coverage,
noting that Mobil was not listed as an additional insured in the
insurance policy, and the insurance representative never told
Maryland that Mobil was to be named as an additional insured. 
 Maryland offered little, if any, evidence to support either
argument, and cannot show that a bona fide dispute existed over the
coverage issue. Regarding the first contention, the only proffered
evidence of B.M.W.'s intention to limit coverage is an unsigned
affidavit, prepared by Maryland itself, which is insufficient to
establish the existence of a bona fide dispute in light of the
absence of any language in the insurance policy expressing this
intent. In addition, there is no evidence to suggest that the
phrase "as their interests may appear," contained in the
certificate of insurance and the underlying contract, established
any basis upon which to limit Mobil's coverage. 
 When an insurer acknowledges providing insurance pursuant to
a contract between the insured and a third party, the contract is
incorporated into the policy, and the documents are "construed
together to determine the parties' intention." Continental
National America Insurance Co. v. Aetna Life & Casualty Co., 186
Ill. App. 3d 891, 896, 542 N.E.2d 954 (1989). In this case, the
contract required B.M.W. to provide at least $250,000 in coverage
to Mobil. Neither this requirement, nor the phrase "as their
interests may appear," precluded B.M.W. from obtaining more than
$250,000 in coverage for Mobil, or the policy itself from providing
more than $250,000 in coverage. Moreover, language found in the
certificate of coverage did not establish the limits of Mobil's
rights under the policies (Pekin Insurance Co. v. American Country
Insurance Co., 213 Ill. App. 3d 543, 547, 572 N.E.2d 1112 (1991);
Lezak & Levy Wholesale Meats, Inc. v. Illinois Employers Insurance
Co. of Wausau, 121 Ill. App. 3d 954, 957, 460 N.E.2d 475 (1984)),
but merely stated the terms of the policy and the policy limits
applicable to the insured. The policies themselves provided up to
$6 million in coverage, and contained no language limiting coverage
for additional insureds. If Maryland truly intended to limit
coverage, it readily could have done so by adding its own
restrictive language to the insurance polices. J.A. Jones
Construction Co. v. Hartford Fire Insurance Co., 269 Ill. App. 3d
148, 151, 645 N.E.2d 980 (1995). 
 Nor is the remedy of reformation applicable here and
Maryland's reliance on Zannini v. Reliance Insurance Co. of
Illinois, Inc., 147 Ill. 2d 437, 590 N.E.2d 457 (1992) (Zannini) in
this regard is misplaced. In Zannini, plaintiff's insurance agent
agreed to obtain coverage for his jewelry, but inadvertently failed
to provide a schedule of the jewelry to the insurer. The policy
issued to plaintiff made no provision for jewelry loss coverage. 
147 Ill. 2d at 444. Holding that the insurance agent possessed
express authority to bind coverage on behalf of the insurer, the
court reformed the contract to include coverage for jewelry
intended to be scheduled. 147 Ill. 2d at 451, 456. The facts of
Zannini are inapposite to the present case. Maryland offered no
evidence to show that the parties intended to provide Mobil with
only $250,000 in coverage, or that the parties mistakenly obtained
$6 million in coverage on behalf of Mobil. Before a court may
reform an instrument on the ground of mistake, the mistake must be
of fact and not of law, common to both parties, and in existence at
the time of the execution of the instrument. 147 Ill. App. 3d at
449. Maryland therefore was not entitled to reformation of the
insurance policy.
 Further, Maryland provided no evidence to prove that it did
not know Mobil was an additional insured under the policies. To
the contrary, Maryland knew the insurance policy issued to B.M.W.
also covered Mobil as an additional insured; initially agreed to
defend Mobil in the Cibulskis suit, without limitation; Maryland
instructed its trial attorney that Mobil was fully insured by
Maryland; and Maryland's attorney prompted Mobil to state in a
sworn answer to an interrogatory that it was insured by Maryland
under two multimillion dollar policies. Based on this undisputed
evidence, all the parties believed that Mobil was entitled to
receive the full amount of coverage. It was not until much later
that Maryland informed Mobil its coverage was limited to $250,000. 
Maryland failed to contradict or rebut these facts, and could not
have raised a bona fide dispute on the coverage issue. 
 Maryland's conduct in asserting the existence of a coverage
dispute is relevant, however, to the circuit court's decision
awarding section 155 attorney's fees. Buais, 275 Ill. App. 3d at
591. When an underlying complaint presents an issue of potential
insurance coverage, and the insurer believes that the policy does
not cover the claim, the insurer may not refuse to defend the
insured, but must either defend the suit under a reservation of
rights or seek a declaration of no coverage. Waste Management,
Inc. v. International Surplus Lines Insurance Co., 144 Ill. 2d 178,
207-08, 579 N.E.2d 322 (1991); J.A. Jones, 269 Ill. App. 3d at 151. 
An insurer failing to act in either fashion, where a court finding
determines wrongfully denied coverage, is estopped from raising
policy defenses to coverage in a subsequent action. Waste
Management, 144 Ill. 2d at 208; J.A. Jones, 269 Ill. App. 3d at
151. 
 Maryland contends that it reserved its rights when it first
informed Mobil that it planned to limit coverage to $250,000. A
reservation of rights must adequately inform the insured of the
rights that the insurer intends to reserve. A notice of a
reservation of rights must make specific reference to the policy
defense to be asserted by the insurer and to the potential conflict
of interest. Royal Insurance Co. v. Process Design Associates,
Inc., 221 Ill. App. 3d 966, 973, 582 N.E.2d 1234 (1991). A proper
reservation allows the insured to decide intelligently whether to
hire independent counsel in order to avoid the conflict or not. 
Royal, 221 Ill. App. 3d at 973. Further, the notice must clearly
inform the party of what right or rights are being reserved. 
 Maryland's delayed announcement of the amended policy limits,
in the middle of pre-trial litigation in the underlying claim, did
not constitute an adequate reservation of rights. Maryland
initially agreed to defend Mobil unconditionally; Mobil had the
right to believe that it was fully covered under the insurance
policies and did not consider obtaining its own counsel to defend
the Cibulskis lawsuit. Maryland's subsequent change of position
created a potential conflict of interest for the trial attorney it
hired to defend Mobil. With a multimillion dollar insurance policy
available, its attorney could enter into settlement negotiations
with plaintiffs and avoid risking a large judgment at trial. 
Conversely, after learning that Mobil was entitled to only $250,000
in coverage, the attorney could hazard taking the case to trial and
seek a judgment favoring Mobil, since Maryland's now reduced
exposure amounted to a relatively small fraction of the Cibulskis'
claim. This latter strategy could have backfired, resulting in a
large judgment that would have exceeded coverage limits, and for
which Mobil, and not Maryland, would have been liable. By failing
to inform Mobil promptly of the potential coverage dispute,
Maryland deprived Mobil of the opportunity to obtain its own
counsel at the outset of the litigation and avoid the potential
conflict of interest.
 As Maryland failed to reserve its rights properly, and created
a potential conflict of interest for its trial attorney by waiting
two and a half years before raising the questioned coverage limits,
Maryland was estopped from later claiming that it was not obligated
to fully indemnify Mobil under the insurance policies, and
therefore could not have raised a bona fide policy defense. The
circuit court had the authority to consider Maryland's delay in
asserting coverage to be vexatious and unreasonable as a matter of
law, and conclude that Mobil was entitled to attorney's fees under
section 155 for the period in which Maryland disputed the coverage
to be provided. 
 Maryland claims that it relied on the advice of its attorneys
in believing that its coverage position was "well grounded in fact
and is warranted by existing law or a good-faith argument for the
extension, modification, or reversal of existing law," in
compliance with Supreme Court Rule 137. 155 Ill. 2d R. 137 (Rule
137). Mobil sought attorney's fees under section 155 of the
Insurance Code, however, not under Rule 137. The two provisions
for attorney's fees apply to different types of conduct. Section
155 allows parties to seek attorney's fees from insurance companies
whose delay of coverage is vexatious and unreasonable because there
is no bona fide dispute over coverage. The language contained in
Rule 137 is inapplicable.
 B
 Maryland next insists that it should not be liable for
services rendered by Mobil's attorney after it ended the dispute
over coverage. Although the parties no longer contested that
issue, the punitive damages claim in the Cibulskis lawsuit created
a new conflict of interest for Maryland's trial attorney, which
could be resolved only by hiring additional counsel to represent
Mobil's interests. This conflict was present because Maryland
claimed it was not obligated to pay any punitive damage award. 
There was less incentive, therefore, for Maryland to settle the
case, while Mobil had a greater desire to settle the case to avoid
paying a large judgment that might not be covered by its insurance.
 Maryland was obligated to pay for counsel hired by Mobil to
protect its interests after Maryland's attorney was faced with a
conflict of interest. An insurer's duty to defend necessarily
includes the right to control the litigation. Nandorf, Inc. v. CNA
Insurance Cos., 134 Ill. App. 3d 134, 136, 479 N.E.2d 988 (1985)
(Nandorf). The attorney hired by the insurer is a fiduciary of
both the insurer and the insured. 134 Ill. App. 3d at 137. In
cases involving conflicting interests, the attorney hired by the
insurer may not also represent the insured absent full disclosure
and consent. Maryland Casualty Co. v. Peppers, 64 Ill. 2d 187,
194, 355 N.E.2d 24 (1976) (Peppers). When a conflict of interest
arises, the insured is entitled to retain independent counsel, to
be paid for by the insurer. Peppers, 64 Ill. 2d at 199; Nandorf,
134 Ill. App. 3d at 137. 
 A conflict of interest exists if the interests of the insurer
would be furthered by providing a less than vigorous defense to the
allegations against the insured. Nandorf, 134 Ill. App. 3d at 137. 
There, the insurer defended Nandorf, but reserved its rights to
deny coverage for punitive damages. 134 Ill. App. 3d at 135. The
court found that although the insurer and Nandorf shared a common
interest in a verdict in favor of Nandorf if the latter was held
liable, the insurer's interests would have been served best by a
small compensatory damage award and a large punitive damage award. 
This conflicting interest, and the fact that the request for
punitive damages formed a substantial part of the claim, entitled
Nandorf to independent counsel. 134 Ill. App. 3d at 138-39. 
 Similarly, in this case, Maryland's and Mobil's interests
diverged on the liability and punitive damages issues. Attorneys
for both Mobil and Maryland acknowledged that Mobil probably would
be found liable if the case went to a jury, and that the judgment
could include a large punitive damage award. It was in Mobil's
best interest, then, to settle the case quickly and avoid the risks
posed by a jury trial. Contrarily, because the probability that
the compensatory damages portion of the claim would have exhausted
the newfound policy limits, Maryland would have lost nothing by
letting the case go to the jury, if Cibulskis did not agree to a
settlement acceptable to Maryland. 
 The conflict presented in this case is further evidenced by
the communications between the attorneys. Counsel hired by Mobil
repeatedly pleaded with Maryland's trial attorney to settle the
case. Maryland's attorney refused several settlement offers made
by the Cibulskis although the attorney previously had indicated
that the case should be settled for the amount being suggested by
those plaintiffs. Maryland's attorney waited until near the end of
trial, just before closing arguments, before settling the
underlying case.
 The conflict of interest faced by Maryland's attorney
demonstrably established the need for an independent counsel to
represent Mobil's interests. Because it had a contractual
obligation to provide Mobil with a viable defense, Maryland must
pay attorney's fees incurred by Mobil in the Cibulskis lawsuit. 
Peppers, 64 Ill. 2d at 199; Nandorf, 134 Ill. App. 3d at 136. 
 C
 Next, Maryland argues that it should not have been ordered to
pay Mobil's attorney fees for the period after the parties settled
the Cibulskis lawsuit, because its conduct during that time was
neither vexatious nor unreasonable. When an insured must bring a
declaratory action against the insurer to enforce its right to
coverage in an underlying lawsuit, the insured may recover section
155 attorney's fees incurred in both the underlying suit and the
declaratory action. Shell Oil, 271 Ill. App. 3d at 909; Verbaere,
226 Ill. App. 3d at 300; Hall v. Svea Mutual Insurance Co., 143
Ill. App. 3d 809, 813, 419 N.E.2d 1102 (1986). In addition, the
insured may recover attorney's fees incurred on appeal. Verbaere,
226 Ill. App. 3d at 302; Hall, 143 Ill. App. 3d at 813. Mobil was
forced to bring a declaratory judgment action after Maryland
reversed its coverage position, which was found to be vexatious and
unreasonable. The circuit court properly ordered Maryland to pay
the full costs of the declaratory judgment action, including the
portion of the action that took place after the underlying suit was
settled. 
 II
 Maryland next disputes the amount of attorney's fees awarded
Mobil. After granting Mobil's summary judgment motion as to
liability for payment of attorney's fees at a hearing, the circuit
court asked the parties for suggestions as to how to proceed on the
damages portion of the case. A colloquy between court and counsel
ensued, the court suggesting a procedure to decide the amount of
damages. The court then specifically asked Maryland's counsel if
he objected to this procedure, to which he responded in the
negative. The court asked the parties to submit documents that
would aid in calculating reasonable attorney's fees. Mobil
submitted extensive billing statements. Mobil's attorney, who
attended the case at every stage, represented to the court her
ability to assist in providing information to the court based upon
personal knowledge. Maryland submitted written objections to
portions of the billing statements, but offered no witnesses. The
court considered Maryland's written objections, and sustained some
of them when it reduced the amount sought by Mobil.
 The amount of fees to be awarded was a factual question that
the circuit court left to further evidentiary presentation and
argument, after finding liability on summary judgment. Since that
amount was decided by the court acting in its discretion as trier
of fact, and not on summary judgment, the award of the amount of
attorney fees is reviewed under the clear abuse of discretion
standard. Shell Oil, 271 Ill. App. 3d at 909; Garcia v.
Lovellette, 265 Ill. App. 3d 724, 727-28, 639 N.E.2d 935 (1994);
Myrda, 221 Ill. App. 3d at 489; Keller v. State Farm Insurance Co.,
180 Ill. App. 3d 539, 554-555, 536 N.E.2d 194 (1989); Verbaere, 226
Ill. App. 3d at 299. Considerable deference to the judgment and
discretion of the court must be given; an increase or decrease of
a fee award will be granted only if there has been a clear abuse of
discretion. Shell Oil, 271 Ill. App. 3d at 909; Garcia, 265 Ill.
App. 3d at 727-28; Myrda, 221 Ill. App. 3d at 489; Keller, 180 Ill.
App. 3d at 554-555; Verbaere, 226 Ill. App. 3d at 299.
 The circuit court must consider several factors when
calculating reasonable attorneys fees, including: the time and
labor required, the novelty and difficulty of the issues, the skill
required, the preclusion of other employment necessary to accept
the case, the customary fee charged in the community, the amount of
money involved in the case, the results obtained, and the
attorney's reputation, experience, and ability. Verbaere, 226 Ill.
App. 3d at 301; McHugh v. Olsen, 189 Ill. App. 3d 508, 514, 545
N.E.2d 379 (1989). The time spent on a case by an attorney is an
important factor to consider. Time records, although important,
are not conclusive, and the court should carefully scrutinize them
to determine whether they represent a reasonable expenditure of
time in the context of the services rendered. McHugh, 189 Ill.
App. 3d at 514. 
 Maryland contends that the award is excessive because the
circuit court awarded fees at a rate of $150 per hour, and
Maryland's attorneys, who were very experienced, charged only $94
per hour. The fact that Maryland's attorneys charged a lower rate
does not make the rate awarded Mobil's attorneys unreasonably high. 
Courts have awarded comparable rates in other section 155 cases. 
See, e.g., Verbaere, 226 Ill. App. 3d at 302 (upholding award of
fees at an hourly rate of $175). The circuit court here considered
the attorney's experience and the fact that no administrative
charges or costs were billed before determining that the rate
requested was reasonable. It cannot be said that this finding
constituted an abuse of discretion. 
 Maryland also disputes the number of hours billed by Mobil's
attorneys, noting that its own attorneys billed fewer hours within
the same time periods. Maryland does not discuss, however, the
fact that it hired three separate law firms to handle the different
issues in this case, one each for the Cibulskis lawsuit, the
declaratory judgment action, and the attorney's fee hearings. 
Mobil hired one firm to perform all three functions. Maryland
cannot compare the time spent by Mobil's attorneys on three
separate claims to services provided by one of Maryland's attorneys
on one claim. 
 A review of the hearing, the billing statements submitted by
Mobil, and Maryland's objections to fees, reveals that the circuit
court thoroughly examined the record, considered all the parties'
arguments, and evaluated the relevant factors before calculating
the attorney's fees. The court did not allow fees for repetitive
legal services, and reduced the requested award to eliminate
billing hours it found to be excessive. Furthermore, although
Maryland claims the amount requested is excessive, it offers no
details regarding where or how the fees should be reduced. At no
time did Maryland's attorney seek an additional evidentiary
hearing, or seek to call any witnesses relative to the attorney's
fees. Nor did he suggest any impropriety in the procedure followed
by the circuit court in assessing the attorney fee amounts. 
Accordingly, the court did not abuse its discretion, and the fees
awarded must be upheld.
 For the reasons set forth above, the decision of the circuit
court must be affirmed on all issues.
 Affirmed.
 HARTMAN, P.J., with HOFFMAN and SOUTH, JJ., concurring.